Nancy CROW *v.* STATE of Arkansas

CR 91-3                                        814 S.W.2d 909

Supreme Court of Arkansas
Opinion delivered September 16, 1991

412

*Craig Lambert*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was convicted for the capital murder of her mother, Gladys Crow, and sentenced to life imprisonment without parole. On appeal, she raises four points for reversal.

As background information leading to appellant's arguments, we first relate some of the pertinent evidence introduced at trial that supports appellant's conviction. Appellant's accomplice, Donald Bates, told the police about the murder, and testified against appellant in exchange for a reduction of the charge to first degree murder and sentence of life imprisonment. The state's evidence showed Ms. Crow was murdered the morning of October 3, 1989, and on October 31, 1989, her body was found partially submerged in a pond located on property owned by Sollie Sutliff. On November 1, Bates confessed to the police, and implicated the appellant as the one who actually killed Ms. Crow. Bates lived on property which he with another person purchased from Ms. Crow and her husband. They were in arrears on the property which was located adjacent to appellant's. He said that appellant expressed concern that she believed her mother planned to disinherit her; therefore, she asked Bates to assist in a plan to murder her mother.

Ms. Crow was expected to arrive at appellant's home on the

morning of October 3, and appellant and Bates designed a plan so the appellant could use a crossbow to shoot an arrow through the window of her mobile home as her mother walked towards the home through a small gate. While various means had been discussed to achieve this objective, Bates testified that he was actually present that morning at appellant's premises and, when Ms. Crow arrived and departed from her car, he suggested she walk through the small gate entrance. As Ms. Crow walked through the gate, the appellant shot her, but her wound was not fatal. Ms. Crow managed to return to her car and attempted to get away. However, by this time, appellant had run to the scene, and with Bates's assistance, they were able to stop Ms. Crow's car. Ms. Crow then passed out, and after Bates and appellant dragged her out of her car, appellant proceeded to shoot Ms. Crow with the crossbow two additional times at close range. Bates related how he and appellant disposed of Ms. Crow's body, clothing, car and the arrows. Prior to Bates's confession, the police had already found Ms. Crow's car, which Bates had burned soon after the murder in order to get rid of the blood stains. After confessing, Bates took the police to where he and appellant had disposed of clothing and also the arrows used to shoot Ms. Crow. The officers were able to retrieve the clothing and two arrows from a creek.

Based upon Bates's confession, the police obtained an arrest warrant for the appellant. As a result of two searches of appellant's home, the officers found two diary sheets. These sheets of paper contained references to the murder and further implicated appellant. At the time of appellant's arrest, she was a patient in a Texas hospital. With this background, we now turn to appellant's first argument on appeal.

Upon the request of Johnson County Sheriff Eddie King, local Texas law enforcement officers effected appellant's arrest at the Texas hospital. Appellant was on oxygen and attached to an I.V. The officers did a search incident to appellant's arrest looking for possible weapons and removed a kitchen knife. While an officer remained in appellant's room, another called Sheriff King who asked if a diary had been found during the search. Upon returning to appellant's room, the Texas officer saw the diary, a brown three-ring notebook covered in foil, situated on a tray table about five to six feet from her bed. The officer seized the diary.

Appellant argued at trial, and now on appeal, that the officers had unlawfully seized the diary, and the trial court erred in failing to suppress its introduction into evidence. We disagree.

Even though the officers did not have a search warrant to search appellant's room, the law permits a search of the area within the immediate control of the person arrested. A.R.Cr.P. Rule 12.2. In *State* v. *Risinger,* 297 Ark. 405, 762 S.W.2d 787 (1989), we set out the following relevant Supreme Court's discussion in *Chimel* v. *California,* 395 U.S. 752 (1969), of the "search incident to arrest" principle as follows:

> [W]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for search of the arrestee's person and the area "within his immediate control" — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.* (Emphasis added.)

In the present case, the record reflects that appellant's diary was only five or six feet from her bed, and although she was on oxygen and attached to an I.V. , she was able, on her own, to leave her bed and to walk. Thus, appellant undoubtedly had the capability to destroy the diary. The accessibility issue aside, the *Chimel* rule defines the area which may be searched, and is not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area. *United States* v. *Palumbo,* 735 F.2d 1095 (8th Cir. 1984).

Gruesome photographs are the subject of appellant's second issue on appeal. In all, eight photographs of the victim's

body were introduced into evidence. The victim's body was partially decomposed, because the body had been submerged in the pond for almost a month. At the trial below, the appellant's attorney only objected to two photographs, exhibits nine and ten. While on appeal, the appellant's argument includes all the photographs, we can only address her arguments on exhibits nine and ten, since she did not properly object to the other photographs. As we have stated countless times, we will not consider arguments raised for the first time on appeal. See, *e.g., Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

We have held that admissibility of photographs rests within the sound discretion of the trial court, and its decision will not be reversed without a showing of clear abuse of discretion. *Morris* v. *State,* 302 Ark. 532, 792 S.W.2d 288 (1990). Even inflammatory photographs are admissible if they tend to shed light on an issue, if they are useful to enable a witness to better describe the objects portrayed, or if they better enable the jury to understand the testimony. *Id.* In *Berry* v. *State,* 290 Ark. 223, 718 S.W.2d 447 (1986), this court warned trial judges against the "carte blanche" acceptance of gruesome photographs. In *Berry,* the court found that six, mostly repetitious, gory, color photographs of the victim's face were of little probative value and could do nothing but inflame the jury. This court has also held that a defendant cannot admit the facts portrayed and thereby prevent the state from putting on its proof. *Cotton* v. *State,* 276 Ark. 282, 634 S.W.2d 127 (1982).

Applying this law to the present case, exhibits nine and ten were three by five color photographs of the victim's body after it had been removed from the pond. The body is partially enclosed in a yellow body bag. The pictures show the rope tied around the victim's body which was used with the concrete blocks pictured in exhibit eight to weigh the body down in the pond. These are the only pictures that show the rope still tied around the body.

This court has upheld the admittance into evidence of photographs of a body removed from a pond. See *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979). Here, the state had to corroborate Bates's account of the murder and hiding of the victim's body, and, in order to do so, it was necessary for the state to show the ropes attached to her body. Not only are these

photographs mild compared to the others not objected to, there is nothing to suggest that the trial judge accepted the state's photographs "carte blanche." In sum, the challenged photographs were necessary for the state to prove its case, and the trial court was correct in admitting them into evidence.

Appellant next argues that the trial court erred in allowing Officer Jerry Dorney to read and explain an entry the appellant had made in her diary. In sum, appellant contends Dorney's testimony was not admissible under Ark. R. Evid. 701 as lay opinion testimony, nor was he qualified to testify as an expert on the subject.

First, we mention the appellant's argument on appeal touches on fourteen entries in appellant's diary, but she only interposed an objection to the first diary entry read by Donrey. The diary entries related to topics other than the mere mention of crossbows and arrows. Only the objections raised at trial level are deemed properly before this court; all others are considered waived. *Parette* v. *State*, 301 Ark. 607, 786 S.W.2d 817 (1990).

The entry as read by Donrey, and to which appellant objected, is as follows:

> [T]he first entry is on Thursday, February 9th, 1989. It's some notations at the bottom of the page. It has Fox Fire, Sport Fire and Spit Fire listed and by the side of each of those is the number, the dollar amount, two hundred sixty-two. There's a notation that says, most energy effect. Thirty, thirty-five, forty, sixty yards deadly; a hundred fifty pound pull; forty dollars for cocking device. Arrows, four dollars each . . . .

After overruling appellant's objection, the prosecutor asked Dorney to tell the jury what, in view of his investigation, was the above entry referring to, and Dorney answered as follows:

> Okay. It shows that she was comparing cross bows, their pound pull, distance in which they are effective, price of the arrows. She was looking for the best buy on a cross bow.

Dorney's response was based at least in part from his investigation and acquired knowledge of crossbows and their brand names. Obviously, a juror without experience or knowledge of crossbows

would not know what Fox Fire, Sport Fire and Spit Fire referred to. Under Ark. R. Evid. 701, when a witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and are helpful to a clear understanding of his or her testimony or the determination of a fact in issue. We have stated that Rule 701 is not a rule against opinions, but is a rule that conditionally favors them. *Carton* v. *Missouri Pac. R.R.,* 303 Ark. 568, 798 S.W.2d 674 (1990). On these facts, we cannot say the trial court abused its discretion in allowing Dorney's testimony. *See Ferrell* v. *State*, 305 Ark. 511, 810 S.W.2d 29 (1991).

We cannot address the appellant's fourth argument challenging the sufficiency of the evidence corroborating Bates's testimony, because appellant failed to renew her motion for directed verdict at the close of the case as is required by A.R.Cr.P. Rule 36.21(b). See *Ferrell*, 305 Ark. 511, 810 S.W.2d 29; *Andrews* v. *State*, 305 Ark. 262, 807 S.W.2d 917 (1991). This rule is applicable in life cases, as well. *Sanders* v. *State,* 305 Ark. 112, 805 S.W.2d 953 (1991).

Under Rule 11(f) of the Rules of the Supreme Court and Court of Appeals, an examination has been made of all other rulings adverse to appellant, and none of them constitute prejudicial error. For the reasons stated above, we affirm.