George WILLIS *v.* STATE of Arkansas

CR 91-106                                      829 S.W.2d 417

Supreme Court of Arkansas
Opinion delivered May 11, 1992

*Clyde E. Lee*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. George Willis, the appellant, was convicted of possession of cocaine with intent to deliver and sentenced to life imprisonment and a $20,000 fine. He contends the Trial Court erred by allowing an improperly authenticated laboratory analysis report and a photograph of a mock up of the crime scene to be introduced into evidence. The report was properly authenticated and admissible, and the photograph was not unfairly prejudicial in view of the explanation of the evidence

presented to the jury. The conviction is affirmed.

Willis, along with co-defendant Robert Bogard, was arrested when Magnolia police officers were informed that persons in a white Cadillac were selling drugs on the corner of South Madison at Alcardun Heights. Officer McKinnis and another patrolman saw the car. As they approached, they observed Bogard standing at the rear of the car with one foot on the bumper. Willis was sitting on the ground next to the car. At Bogard's feet was a crumpled sack. The officers opened the sack and found a small pill bottle of what appeared to the officers to be crack cocaine.

## 1. The laboratory report

The bottle and its contents were sent to the State Crime Laboratory for analysis. A staff chemist identified the substance as cocaine and returned a report to the investigating officer with the chemist's attestation attached to the manila envelope in which the bottle was sealed. The analysis was admitted as evidence at trial over Willis's objection.

The objection was that the report was not properly notarized, was hearsay, and was without foundation. A partial notary statement and signature appeared on the report. The Court overruled the objection and stated that an attestation in accordance with Act 889 of 1989 was all that was needed for authentication. The relevant portion of the Act, codified at Ark. Code Ann. § 12-12-313(a) (Supp. 1991), permits introduction of a drug analysis report when "attested to by the executive director [of the State Crime Laboratory] or his assistants, associates, or deputies."

In support of his argument Willis relies on *Nard* v. *State*, 304 Ark. 159, 801 S.W.2d 634 (1990), where we held that the Statute requires more than the mere signature of the person or chemist who performed the analysis.

Nard objected to the drug analysis report in his case when the prosecution sought to introduce it through the testimony of a chemist who had not personally performed the tests. The State's witness acknowledged the chemist's signature, which appeared at the bottom of the report and stated that the chemist who signed was a certified drug analyst who had worked in the laboratory for

the past three years. Nard's objection cited § 12-12-313 and stated that the report had not been properly attested. We agreed because there were not sufficient "indicia of truthfulness" which we found could best be presented with an attestation by the chemist who performed the test.

■ Willis's objection in this case also challenged the attestation, but unlike the report in the Nard case, the report contained an attestation by the chemist who purported to have performed the test:

> I, Keith Kerr, Chemist, do hereby certify and attest that I personally performed the laboratory tests and prepared the laboratory analysis report in Laboratory Case No. 90-02473.

This statement provides the indicia of truthfulness lacking in the *Nard* case and satisfies the requirements of the Statute. There is no notarization requirement.

## 2. The photograph

The problem with the photograph is that the sack used to depict the crime scene was a large one. The sack in which the drugs were found was a small one which was crumpled. In addition to his objection about the size of the sack, Willis contends the sack used in the photograph was not the "best evidence" because the actual sack was not available for unknown reasons.

The Court admitted the photo with the caveat that the jury be informed of the discrepancies. The prosecutor said he would explain to the jury that the sack in question was much larger than the original sack and the circumstances were different to which the Court stated, "[t]his would be important."

*Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986), is cited in support of Willis's argument and for the proposition that a court should carefully weigh the probative value of photographs against their prejudicial nature. Willis asserts that the photograph sheds no light on any issue, a challenge to its probative value, but makes no meritorious argument with respect to prejudice. It is true that the photo is merely cumulative of the testimony and, therefore, has only marginal probative value, but

that does not make it inadmissible.

The testimony shows clearly that the person pictured was standing as co-defendant Bogard had stood, with the sack at his feet, on the day the arrest occurred. There was no possibility of confusion in the identification of the person found nearest to the drugs. The explanation was clear that the sack in the photo was larger. The only possibly prejudicial implication the size of the sack could convey was with respect to the quantity of drugs seized. The laboratory report makes the quantity of drugs seized very clear.

We reverse the Trial Court's admission of evidence only upon a showing of prejudice and a resulting abuse of discretion. *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990); *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988). Given the explanations presented to the jury, there was no prejudice in the admission of the photograph.

### 3. *Rule 11(f)*

The record has been examined to determine whether there are any errors, other than those argued, requiring reversal, and none have been found.

Affirmed.