Ben Wesley HICKS *v.* STATE of Arkansas

CR 96-1323                    940 S.W.2d 855

Supreme Court of Arkansas
Opinion delivered March 24, 1997

*Steven D. Oliver*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Ben Wesley Hicks was convicted by jury of the first-degree murder of Lonnie Muldoon, and was sentenced to forty years' imprisonment. His sole point for reversal is that, during sentencing, the trial court erred in admitting certain victim-impact evidence. Specifically, Hicks urges the State should not have been allowed to present a videotape consisting of photos of Muldoon, his family, or friends. He argues that the video was narrated by Muldoon's brother, Alfred, and because Alfred improperly elaborated and wept during the video's showing, the tape's probative and informative value to the jury was outweighed by its prejudicial effect. He further suggests that, because the video contained numerous photos of Muldoon's children, the tape was needlessly cumulative and compounded the prejudice. We disagree.

Hicks concedes that the Supreme Court in *Payne v. Tennessee*, 510 U.S. 808 (1991), held that a state is permitted to authorize victim-impact testimony, and Arkansas has done so. *See* Ark. Code Ann. § 16-97-103(4) (Supp. 1995); *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). He argues, as well, that Muldoon's brother, wife, and two sons were legitimate witnesses to testify about how Muldoon's death has affected their lives. Hicks argues, however, that the State's case here exceeded appropriate victim-impact evidence because the format of the videotape and excessive number of photographs of Muldoon's children were so unduly prejudicial that the evidence violated the Due Process Clause. He relies on that part of the *Payne* decision which says, "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for

relief." Contrary to Hicks's belief, no due process violation is present here.

We point out first that Hicks's objection below was that Alfred's narration on behalf of the Muldoon family included hearsay and should have been excluded. The trial court sustained Hicks's objection, stating that the family members could be called to testify. Nonetheless, Alfred continued his narration, and Hicks later only said he wanted to note his previous objection to the videotape's introduction. He never again mentioned his hearsay objection, asked for clarification or moved to strike, nor does he specify any hearsay issue on appeal.[1] Instead, Hicks merely argues on appeal that the videotape was needlessly cumulative and prejudicial.[2]

■■ This court has previously held that videotapes, like photographs, are not rendered inadmissible merely because they are cumulative. *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993); *see also Willis v. State*, 309 Ark. 328, 829 S.W.2d 417 (1992). The *Willis* court further stated that it reverses the trial court in such circumstances only upon a showing of prejudice and a resulting abuse of discretion. *Willis* at 330 and 331. In considering what the State may offer as relevant victim-impact testimony, we look to the Supreme Court's holding in *Payne* where it stated the following:

We are now of the view that a State may properly conclude that *for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.* "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered an individual, so too the victim is an individual whose death represents a

---

[1] As a matter of strategy at trial, Hicks may well have surmised that it would be worse to have Muldoon's teenage sons and wife testify than to have Alfred relate the effect Muldoon's death has had on them.

[2] We note, too, that Hicks never specifically mentioned the A.R.E. Rule 403 probative versus prejudicial issue he now argues on appeal. However, since Hicks did raise "cumulative and prejudicial" error both below and on appeal, we believe Hicks's Rule 403 objection is sufficiently preserved for consideration in this appeal.

unique loss to society and in particular to his family. (Emphasis added.)

See also *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996), (where this court rejected as too narrow Wooten's argument that *Payne* permits victim-impact evidence only to rebut mitigating evidence).

Here, the trial judge viewed the videotape before allowing it to be played to the jury, and he ruled portions of the tape inadmissible. The judge also ordered the State to instruct Alfred, as narrator, to describe the pictures, but not embellish them, or the judge would stop the tape. Touching on the tape's further relevancy and probative nature, the trial judge said that the jury should be allowed to know who Muldoon was, especially in view of Hicks's earlier testimony describing Muldoon as being the aggressor and as having had an aggressive or violent character in the past. In this respect, Ark. Code Ann. § 16-97-103(5) and (7) (Supp. 1995) permitted the State, during sentencing, to present relevant character evidence and evidence relevant to the guilt phase of the trial.

The record reflects that the trial court carefully reviewed and closely monitored the videotape shown at Hicks's sentencing phase. The trial court carefully spelled out the probative value of the tape and its intended purpose to show a side of Muldoon different from the one described by Hicks. Hicks, in support of his own self-defense claim, repeatedly testified that Muldoon had without provocation argued, cursed, and fought others, and had utilized weapons in earlier altercations.

The State's victim-impact evidence sanctioned by the Supreme Court is designed to show each victim's uniqueness as an individual human being, and that the victim's death represents a unique loss to society and, in particular, to his family. Muldoon was no longer able to counter the charges asserted against him by Hicks, and the videotape merely served as a reminder to the jury that, just as Hicks, the murderer, should be considered as an individual, so, too, the State could show that Muldoon's, the victim's, death represents a unique loss.

■ ■    In conclusion, we mention this court's consistent view that, where the trial court has exercised its sound discretion in monitoring or limiting the admissibility of purported cumulative and prejudicial photos at trial, this court on review will not reverse. For example, *see Williams v. State*, 322 Ark. 38, 907 S.W.2d 120 (1995); *Williams v. State*, 316 Ark. 694, 874 S.W.2d 369 (1994); *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994); *Harris v. State*, 314 Ark. 379, 862 S.W.2d 271 (1993); *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993); *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993); *Crow v. State*, 306 Ark. 411, 814 S.W.2d 909 (1991); *Coulter v. State*, 304 Ark. 527, 804 S.W.2d 348 (1991). Given the trial court's expressed and careful consideration of the videotape's relevancy and purpose, we have no hesitation in upholding the trial court's decision admitting the tape and its narration. We affirm.

BROWN and IMBER, JJ., concur.

ROBERT L. BROWN, Justice, concurring. I write because I believe the issue relating to the extent and kind of victim-impact evidence presented in this case presents a close question.

Alfred Muldoon, Lonnie Muldoon's brother, provided narration for a silent videotape that was almost 14 minutes in length and contained approximately 160 photographs that essentially spanned the entire life of the victim. More than 60 of these photographs were images of the victim at various stages of his life, including photographs of him as a toddler with his family, various school pictures, and photographs with his wife and two sons. Approximately 40 pictures were dedicated to his older son, Robbie, and followed his growth from infancy to adulthood, and approximately 30 photographs traced the development of his younger son, Tony Joe, from infancy to his growth into a young man. The remaining images ranged from family events, such as Thanksgiving dinner, to the victim's involvement with various aspects of the carnival business.

The General Assembly has provided an openended standard that evidence relevant to sentencing may include victim-impact evidence or statements and has not limited the introduction of this evidence to capital murder cases. *See* Ark. Code Ann. § 16-97-

103 (Supp. 1995). But that statute neither provides guidelines nor criteria for what might fall under the aegis of this victim-impact evidence. Clearly, the court may receive testimony from "the victim's family to those close to that person who were profoundly impacted by his death." *Nooner v. State*, 322 Ark. 87, 109, 907 S.W.2d 677, 688-89 (1995), *cert. denied*, 116 S. Ct. 1436 (1996). However, in only one capital case has this court been required to discuss in detail the content of victim-impact evidence properly admitted during the penalty phase. *See Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996)(discussing the testimony of the relatives of two of the three murder victims), *cert. denied*, 117 S. Ct. 436 (1996).

The seminal case in this area is *Payne v. Tennessee*, 501 U.S. 808 (1991). *Payne* was a 6-3 decision in which the Court overruled past precedent and held that the Eighth Amendment did not erect a *per se* bar against states allowing for the admission of victim-impact evidence. In that case, Chief Justice Rehnquist, writing for the majority, made the following statements:

> As a general matter, however, victim impact evidence is not offered to encourage comparative judgments of this kind - for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead *each* victim's "uniqueness as an individual human being," whatever the jury might think the loss to the community resulting from his death might be.

501 U.S. at 823 (emphasis in original).

> Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities. We think the *Booth* Court [*Booth v. Maryland*, 482 U.S. 496 (1987)] was wrong in stating that this kind of evidence leads to the arbitrary imposition of the death penalty. In the majority of cases, and in this case, victim impact evidence serves entirely legitimate purposes. In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. (Citing authority.)

501 U.S. at 825.

> A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

501 U.S. at 827.

In a concurring opinion joined by Justices White and Kennedy, Justice O'Connor wrote:

> A State may decide also that the jury should see "a quick glimpse of the life petitioner chose to extinguish," (citing authority), to remind the jury that the person whose life was taken was a unique human being. . . .
> Certainly there is no strong societal consensus that a jury may not take into account the loss suffered by a victim's family or that a murder victim must remain a faceless stranger at the penalty phase of a capital trial. Just the opposite is true. Most States have enacted legislation enabling judges and juries to consider victim impact evidence.

501 U.S. at 830-31 (O'Connor, J., concurring).

> The Eighth Amendment does not prohibit a State from choosing to admit evidence concerning a murder victim's personal characteristics or the impact of the crime on the victim's family and community.

501 U.S. at 832-33 (O'Connor, J., concurring).

Justice Souter, in a concurring opinion joined by Justice Kennedy, underscored the fact that information revealing the individuality of the victim and the impact of the crime on the victim's survivors was appropriate. He did allude, however, to the fact that evidence about the victim and survivors can be so inflammatory as to risk a verdict impermissibly based on passion rather than deliberation. Both Justice Souter and Justice O'Connor, in their concurrences, made reference to the fact that this form of evidence falls within the trial judge's purview to control the proceedings consistently with due process and that where inflammatory evidence is improperly admitted, appellate courts must

carefully review the record to determine whether the error was prejudicial.

From the foregoing, the following principles can be gleaned from *Payne*:

- States may legitimately conclude that evidence about the victim and the impact of the victim's murder on the victim's family is relevant to sentencing.
- Victim-impact evidence is designed to show both the victim's uniqueness as an individual human being and the loss to the community.
- Due Process will prevent the evidence if it is so unduly prejudicial that it renders the trial fundamentally unfair.
- There exists a burden on both trial courts and appellate courts to determine whether certain victim-impact evidence runs afoul of the Due Process Clause.

Bearing these principles in mind, two state appellate courts in particular have provided explicit directions for the introduction of victim-impact evidence. In *State v. Muhammad*, 678 A.2d 164 (N.J. 1996), the Supreme Court of New Jersey discussed victim-impact evidence at length and reached a conservative position:

> The testimony can provide a general factual profile of the victim, including information about the victim's family, employment, education, and interests. The testimony can describe generally the impact of the victim's death on his or her immediate family. The testimony should be factual, not emotional, and should be free of inflammatory comments or references.

*State v. Muhammad*, 678 A.2d at 180. The New Jersey Supreme Court also established a procedure for such testimony, requiring that the testimony be reduced to writing and that a hearing be held to determine whether the probative value of each specific point is substantially outweighed by the risk of undue prejudice. Trial courts were further instructed to admonish the witness that he would not be allowed to testify if he cannot control his emotions. Furthermore, comments pertaining to characterizations of the defendant, the crime, and the appropriate sentence were specifically proscribed. *Id.*

In *Cargle v. State*, 909 P.2d 806 (Okl. Cr. 1995), *cert. denied*, 117 S. Ct. 100 (1996), the Court of Criminal Appeals of Oklahoma cited Oklahoma's statutory definition of victim-impact evidence:

> "Victim impact statements" means information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, or person designated by the victim or by family members of the victim and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence[.]

*Cargle v. State*, 909 P.2d at 827, *citing* Okla. Stat. Ann. tit. 22, § 984 (Supp. 1993). In commenting on victim-impact evidence, the court stated: "So long as these personal characteristics show how the loss of the victim will financially, emotionally, psychologically, or physically impact on those affected, it is relevant, as it gives the jury 'a glimpse of the life' which a defendant 'chose to extinguish.'" *Cargle v. State*, 909 P.2d at 828, *quoting Payne v. Tennessee*, 501 U.S. at 822.

In conjunction with the pronouncement of specific procedures to minimize prejudice, the Louisiana Supreme Court has espoused the following general rule:

> [I]ntroduction of detailed descriptions of the good qualities of the victim or particularized narrations of the emotional, psychological and economic sufferings of the victim's survivors, which go beyond the purpose of showing the victim's individual identity and verifying the existence of survivors reasonably expected to grieve and suffer because of the murder, treads dangerously on the possibility of reversal because of the influence of arbitrary factors on the jury's sentencing decision.

*State v. Taylor*, 669 So.2d 364, 370 (La. 1996), *cert. denied*, 136 L. Ed. 2d 106 (1996), *quoting State v. Bernard*, 608 So.2d 966, 972 (La. 1992). *See also McClain v. State*, 477 S.E.2d 814, 825 (Ga. 1996)(allowing victim-impact evidence when it did not encourage comparative judgments and was not a "detailed narrative of the emotional and economic suffering of the community").

Consistent with these limitations, a number of state appellate courts have upheld the admission of brief videotapes and a small number of photographs as victim-impact evidence because they tended to illustrate the victim's uniqueness as an individual and did not render the proceedings fundamentally unfair. *See, e.g., People v. Mitchell*, 604 N.E.2d 877 (Ill. 1992)(noting that the introduction of photographs of victims while alive would not render a proceeding fundamentally unfair), *cert. denied*, 113 S. Ct. 2936 (1993); *Whittlesey v. State*, 665 A.2d 223 (Md. 1995)(allowing 90-second videotape of the victim playing the piano, a skill for which he was nationally recognized), *cert denied*, 134 L. Ed. 2d 100 (1996); *State v. Parker*, 886 S.W.2d 908 (Mo. banc 1994)(allowing photograph of the victim and her daughter), *cert. denied*, 115 S. Ct. 1827 (1995); *State v. Tucker*, 478 S.E.2d 260 (S.C. 1996)(allowing photographs of the victim at various places on vacation, the Christmas decorations in her yard, the victim holding her godchild, and the victim fishing); *Penry v. State*, 903 S.W.2d 715 (Tex. Cr. App. 1995)(photographs of the victim and her dog were not excludable as victim-impact evidence when the witnesses refrained from opining as to the crime, the defendant, and the appropriate punishment), *cert. denied*, 116 S. Ct. 480 (1995). *But see, e.g., Al-Mosawi v. State*, 929 P.2d 270 (Okl. Cr. 1996)(excluding photographs of victims that did not demonstrate information about the victims and did not show how their deaths had an emotional, financial, psychological or physical impact on their survivors).

I could find no case that has gone as far as the instant case in allowing the sheer number of photographs coupled with the narration by a family member. Almost half of the pictures were of the victim's two sons. Certainly, the point that the sons are now fatherless is a legitimate one, but at some point the line is crossed from pure information, and raw emotion takes hold.

I concur in the result because the trial judge had no guidance on this point and did exercise his discretion in curbing part of the presentation. Moreover, I cannot conclude that the presentation of the videotape rendered Hicks's trial *fundamentally unfair*. And that is the standard. I write only to emphasize that this court or the General Assembly should fashion criteria on the introduction of victim-impact evidence to assist the trial courts in exercising

their discretion. As matters stand today, the guidance in this area is sparse indeed.

IMBER, J., joins.