Joe Michael COPELAND *v.* STATE of Arkansas

CR 00-481                                      37 S.W.3d 567

Supreme Court of Arkansas
Opinion delivered January 18, 2001

*Darrell F. Brown & Associates, P.A.,* by: *Darrell F. Brown,* for appellant.

*Mark Pryor, Att'y Gen.,* by: *Jeffrey A. Weber,* Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Joe Michael Copeland appeals from a conviction of first-degree murder and his sentence of life imprisonment. He raises five points for reversal.

Copeland first contends that the verdict was unsupported by substantial evidence as to the element of intent. His argument is meritless. A person commits first-degree murder if "[w]ith a purpose of causing the death of another person, he causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). A person acts "purposely" with respect to his conduct "when it is his conscious object to engage in conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202(1) (Repl.1997). On appellate review, it is only necessary for this court to ascertain that evidence which is most favorable to appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Thompson v. State*, 338 Ark. 564, 999 S.W.2d 192 (1999).

■ Copeland killed Dennis Arnold at a place next to the Cossatot River near DeQueen where Copeland wanted to show friends an underwater cave containing quartz crystals he had found. Before going to the river, he asked an acquaintance, Gerry Deer, to go to Broken Arrow, Oklahoma, to fill up Copeland's diving tank with air and to purchase three boxes of .22 shells. Copeland, Arnold, and Deer's son, Paul Steffler, were present at the river, along with a handful of other people. One of those present, Billy Lawson, said that, as Copeland was loading his gun with the .22 shells, Copeland stated he was going to get Arnold. Prior to this threat, Copeland had complained that he was missing $2,500.00, and he knew who took it. Lawson decided to leave and advised Steffler to do likewise, but Steffler wanted to swim. Before departing, Lawson told Steffler to tell Arnold of Copeland's threat. Steffler subsequently communicated Copeland's threat to Arnold, who then attempted to leave; however, as Arnold was leaving, Copeland shot him in the back of his head five times and once in the upper back. Steffler was present at the scene, although his back was turned at the moment Copeland fired the shots.

After shooting Arnold, Copeland asked Steffler to drive him to a swimming beach, and Steffler complied. After taking Copeland to the beach, Steffler immediately went to report the killing to the police, and Officer Cam Stringfellow was dispatched to locate Copeland. When the officer found and approached Copeland,

Copeland said, "I know why you are here. I'm not going to give you any trouble. I shouldn't have done it, but I was high on drugs." Officer Stringfellow immediately advised Copeland of his *Miranda* rights, and took him into custody.

Copeland was again read his rights at the station by Deputy Sheriff Chris Brackett, and during his interview, conducted by Brackett and Arkansas State Police Investigator Lynn Benedict, Copeland confessed to killing Arnold and said he did it because he believed Arnold had stolen money from him. Copeland added that he felt good about killing Arnold because "that's what happens when someone steals from him." Also introduced into evidence was a letter Copeland mailed to his brother, wherein Copeland again admitted killing Arnold.[1]

▮ The foregoing evidence shows that Copeland repeatedly confessed to killing Arnold; in addition, Steffler was a witness to the murder. Moreover, his prior threat, the obtaining of .22 shells for his gun, and the fact that Arnold was shot in the back of his head and back six times, showed Copeland's purposeful and intentional killing of Arnold. The intent necessary for first-degree murder may be inferred from the type of weapon used, from the manner of its use, and the nature, extent, and location of the wounds. *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996). Given the substantial evidence presented at trial, the trial court did not err in denying Copeland's motion for directed verdict on the basis of insufficient evidence to prove intent.

In his second point for reversal, he claims the trial court erred in denying him a continuance for the purpose of obtaining a proper independent psychiatric evaluation and timely hearing as to his competency to stand trial. Here, Copeland's first indication that a complete psychiatric evaluation might be necessary was evident in November of 1998, or about four months after the shooting, when Drs. Allan Newman and Charles Mallory wrote a letter indicating that Copeland demonstrated signs of mental illness and that inpatient evaluation would be required. Later in May of 1999, the doctors' psychiatric report concluded Copeland was capable of cooperating with his attorney in preparation of his defense, he possessed the capacity to appreciate the criminality of his conduct at

---

[1] In this letter, he claimed he killed Arnold because Arnold beat his wife.

the time of the crime, and further noted, as family history, that Copeland's brother had been diagnosed with bipolar disorder. The same report also reflected Copeland had suffered from amphetamine dependence, which was in full remission in a controlled environment. In sum, more than four months prior to trial, the State's psychiatric report apprised Copeland of his competency at the time of the crime and as to his ability to stand trial, and the report included his drug dependence and family history of bipolar disorder. Nonetheless, he made no investigation of his own of these matters.

In *Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997), this court was met with a similar situation where the defense had not been diligent in seeking information by requesting a continuance. There, the court held the defendant's burden to prove the existence of a mental disease or defect could have been easily pursued on his own. Instead, the defense chose to employ the strategy of waiting to see what the State's doctors would find, and only then did defendant Miller retain his own expert to double check the results. That is the situation in the present case. Also, for the same reason stated by the *Miller* case, we conclude that the trial court here did not abuse its discretion in denying Copeland's motion for continuance in these circumstances.

In his next argument, Copeland submits that he should have been allowed to present a defense of mental disease or defect or alternatively to put on psychiatric testimony to negate the element of intent. Neither of these points has merit. First, under Ark. Code Ann. § 5-2-304(a) (Repl. 1997), whenever a defendant intends to raise mental disease or defect as a defense in a prosecution or put in issue his fitness to proceed, he must notify the prosecutor and the court at the *earliest practicable time*. (Emphasis added.) Here, Copeland had not formally raised the defense as late as one day before trial, but instead stated he reserved the right to raise the insanity defense until he could cross examine Dr. Mallory, since the State had not called Mallory as a witness at the pretrial hearing on the psychiatric evaluation. In fact, the trial judge had directed Copeland to give notice of such affirmative defense ten days before trial. However, Copeland chose not to do so, and only did so midway during the State's case. In denying Copeland's continuance motion, the trial judge made it clear that Copeland had the time and opportunity to obtain the information available, if any, to

determine if he had a legitimate mental disease or defect defense. Both Mallory and Newman signed their forensic report which concluded Copeland was competent, and Newman properly testified and was cross examined regarding the doctors' opinions as to Copeland's competency.[2]

As to Copeland's alternative argument that he should have been able to put on psychiatric testimony to show he lacked the ability to form the requisite intent to commit murder in the first degree, this argument is easily disposed of because he never proffered any testimony that would have reflected on the State's evidence bearing on intent. Midway through the guilt phase of the trial, when Copeland moved for permission to assert the insanity defense, he told the court that Dr. Newman's testimony would be "relevant" to the issue of intent. However, other than a generalized reference to Dr. Newman's testimony from the pretrial hearing, Copeland never proffered the substance of what the doctor's testimony would have been.

■■ In the recent case of *Goff v. State*, 341 Ark. 567, 19 S.W.3d 579 (2000), this court dealt with the subject of proffering testimony. There, Belynda Goff contended that she should have been allowed to offer testimony as to her innocence. There, the court stated the following:

> To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so we can review the decision, unless the substance of the evidence is apparent from the context. *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999) (citing Ark. R. Evid. 103(a)(2)); *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996); *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995). Certainly, as Mrs. Goff argues, it is evident from the context of the various arguments that she wished to testify about her innocence. However, absent a proffer of the testimony she sought to admit, we cannot tell how the testimony she claims she was precluded from giving differs from that which the trial court ruled admissible. Because she failed to proffer the testimony she wished to present, Mrs. Goff cannot now claim that the trial court erred by excluding it. *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999) (citing

---

[2] While this point bearing on Mallory's unavailability to testify was raised below, it is questionable on whether Copeland specifically argues this issue on appeal.

*McGehee v. State*, 338 Ark. 1532, 175, 992 S.W.2d 110, 124 (1999)).

*Goff,* 341 Ark. at 573. In the instant case, as in *Goff,* the trial judge was not apprised of the evidence or a proffer bearing on the intent issue now argued. As noted above, the only attempt at a proffer was defense counsel's statement that the doctor's testimony "is relevant to the guilt phase of this trial . . . as it relates to the appropriate degree of the offense." In sum, Copeland simply never offered the substance of Dr. Newman's testimony upon which he intended to rely. Therefore, we hold that the issue was not preserved.

■ Copeland's fourth point on appeal is that the trial court erred in permitting the victim's former wife, Teresa Arnold, to read her statement to the jury during the sentencing phase. Victim impact evidence is authorized by Ark. Code Ann. § 5-4-602(4) (Repl. 1997). Such evidence is not an additional aggravating circumstance, but rather is relevant evidence which informs the jury of the toll the murder has taken on the victim's family, *Noel v. State,* 331 Ark. 79, 93, 960 S.W.2d 439, 446 (1998), and is admissible unless it is so prejudicial to make the trial fundamentally unfair. *Kemp v. State,* 324 Ark. 178, 205, 919 S.W.2d 943, 957 (1996); *see also Payne v. Tennessee,* 501 U.S. 808 (1992).

■ ■ In the instant case, Copeland specifically complains that, because Teresa Arnold was allowed to read her written statement, Copeland was unable to cross examine her. However, we fail to find any merit in this argument, since Teresa was present and was subject to any objections or questions Copeland wished to interpose. Moreover, we note that this court has approved the use of a video statement, *Hicks v. State,* 327 Ark. 727, 940 S.W.2d 855 (1997), and the reading of a poem, *Noel, supra.* Copeland further objects to Teresa's hearsay testimony wherein she related that, "[a]fter the news [Dennis Arnold] died, his mother got sick and she has [sic] diabetes. And she just gave up. She was laying on the table and she told me she was tired, tired of trying and she passed away." We first note that, when this statement was read to the jury, Copeland did not object and therefore has failed to preserve the issue. As the State points out, unobjected hearsay testimony may be considered by the trier of fact. *See Brown v. State,* 330 Ark. 603, 954 S.W.2d 273, 274 (1997).

■ Copeland also claims error occurred when Teresa was allowed to read a statement prepared by Teresa and Dennis Arnolds' daughter, Amber. He protests that he was "not allowed to cross examine" her, but the record belies his claim. In fact, the trial judge subsequently agreed with Copeland and stated he believed Amber should be subject to cross examination if Copeland's counsel wanted her as a witness. When the judge asked if Copeland wanted to cross examine her, counsel replied, "No." We further note that, while Copeland made a general remark that "[Amber] was old enough to answer the questions," he announced that he did not plan to object to any statement made by Amber. In these circumstances, Copeland fails to offer what prejudice ensued from the introduction of Amber's statement through her mother.

In his final argument, Copeland contends that the trial court erred in denying his motion to suppress the statement he gave to the police. He appears not to challenge the voluntariness of his confession, but questions whether the confession was given knowingly, since there was evidence indicating he was on methamphetamine and said bizarre things at the time he made the statements. The State responds, stating Copeland failed to raise this point below, and therefore failed to preserve this point on appeal. While Copeland appears to agree that the specific issue was not argued at the suppression hearing, he submits that the State kept Dr. Mallory away so he could not be cross examined; thus Copeland was unable to develop the issue. We disagree.

■ ■ Again, as we discussed earlier, the report by Drs. Newman and Mallory was introduced, and Newman properly testified concerning their opinions and was duly cross examined on them. The doctors opined that Copeland was sane at the time of the murder and was competent to stand trial. After hearing testimony of the police officers and Dr. Newman, and considering the doctors' report, the trial judge concluded that, at the time of his arrest, Copeland was merely "acting crazy." When a trial court's denial of a motion to suppress is challenged, our court makes an independent examination of the issue based on the totality of the circumstances and views the evidence most favorable to the State. *Benson v. State*, 342 Ark. 684, 30 S.W.3d 731 (2000). In doing so, we believe the evidence clearly sustains the trial court's ruling in denying Copeland's motion to suppress.

The record has been examined to ensure that all rulings adverse to Copeland have been abstracted; they have, and no additional points appear to merit briefing.

For the foregoing reasons, we affirm.

IMBER, J., concurs in part and dissents in part; HANNAH, J., not participating.

ANNABELLE CLINTON IMBER, Justice, concurring in part; dissenting in part. I agree with the majority on all points of appeal except its disposition of Mr. Copeland's argument that during the guilt-innocence phase of the trial the lower court erred by refusing to admit psychiatric testimony to negate the essential element of purposeful intent as to the offense of first-degree murder. The majority states that "this argument is easily disposed of because he never proffered any testimony that would have reflected on the State's evidence bearing on intent, or lack thereof." It is well-settled that when challenging the exclusion of testimony, an appellant must make a proffer of the excluded evidence at trial unless the substance of the evidence is apparent from the context. *Halford v. State,* 342 Ark. 80, 27 S.W.3d 346 (2000); Ark. R. Evid. 103(a)(2). The purpose of such a proffer is so that the record may disclose the substance or purport of the excluded testimony thereby allowing this court to determine whether or not the rejection of the evidence was prejudicial. *Woods v. State,* 342 Ark. 89, 27 Ark. 367 (2000). Absent a proffer of the excluded testimony, we have no way of knowing whether the appellant was prejudiced by the challenged ruling. *Leaks v. State,* 339 Ark. 348, 5 S.W.3d 448 (1999).

Here, the record sufficiently discloses the substance or purport of the excluded testimony so that we may determine whether the rejection of the evidence was prejudicial. Even the State concedes that "Dr. Newman testified at the competency hearing that, at one time, the appellant showed signs of active mental illness." That testimony was based on Dr. Newman's psychiatric evaluations of Mr. Copeland. Therefore, the trial court knew the substance of Dr. Newman's testimony when the guilt phase of the trial commenced because Dr. Newman had testified at the September 28, 1999 competency hearing the day before trial began. Additionally, Dr. Newman testified at the sentencing phase of the trial that Mr. Copeland showed a large number of symptoms of mental illness and

symptoms of bipolar disorder. He also testified that Mr. Copeland suffered from delusional thinking immediately after the crime. Accordingly, I cannot agree with the majority that Mr. Copeland never proffered any testimony that would have reflected on the State's evidence bearing on intent, or lack thereof. Even when mental disease or defect does not constitute a defense, evidence of it is relevant on the question of the defendant's culpable mental state. *Graham v. State*, 290 Ark. 107, 717 S.W.2d 203 (1986) (citing *Campbell v. State*, 265 Ark. 77, 576 S.W.2d 938 (1979)); Ark. Code Ann. § 5-2-303 (Repl. 1997). I likewise disagree with the majority's statement that Mr. Copeland made no proffer *during the guilt phase of the trial*. The record shows that Mr. Copeland's attorney, during his arguments to the court on this issue at the guilt phase, referred several times to the prior testimony of Dr. Newman "which was given on the 28th" during the competency hearing.

For the above reasons, I would address the merits of this point on appeal and determine whether the trial court committed prejudicial error by excluding expert testimony regarding Mr. Copeland's mental illness during the guilt-innocence phase of the trial.