Eddy Stanley HARRIS *v.* STATE of Arkansas

CR 05-751                                            234 S.W.3d 273

Supreme Court of Arkansas
Opinion delivered April 20, 2006

*Terrence Cain*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. Appellant Eddy Harris, Jr., appeals the judgment and commitment order of the Pulaski County Circuit Court convicting him of two counts of capital murder and sentencing him to life without parole for the deaths of

Craig Tedder and Brad Dison. On appeal, he raises three points of error: (1) the circuit court erred in denying the appellant's motions for a directed verdict when the State failed to prove beyond a reasonable doubt that the appellant committed or attempted to commit robbery or that he caused the deaths; (2) the circuit court abused its discretion in failing to suppress a pretrial identification when the identification was the result of an unduly suggestive identification procedure; and (3) the circuit court abused its discretion in denying the appellant's motion in limine to prohibit Chandra Baskin from testifying that two weeks prior to the shootings, she heard the appellant and her boy-friend, George Larue Hall, planning a robbery, which testimony was irrelevant, unduly prejudicial, and inadmissible as a prior bad act. We find no error and affirm. Because this case involves a life sentence, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2005).

On May 3, 2002, the Little Rock Police Department received a phone call about a shooting on West 12th Street. When officers arrived, they found the bodies of two victims, Craig Tedder and Brad Dison. Both victims had sustained multiple gunshot wounds. The police investigation revealed that Tedder and Dison had come to Little Rock from Jonesboro to recover a large sum of money they had advanced two weeks earlier in connection with an aborted drug transaction. The homicide investigation led by Detective Ronnie Smith eventually turned up information indicating that George Larue Hall and his cousin, Appellant Harris, were responsible for the double homicide.

Thereafter, the police received a tip from an anonymous caller that George Hall and his cousin "E" were on the street bragging about a shooting. The caller was able to give police a home address for "E." Upon arriving at his home, the police discovered that "E" or "EJ" was Appellant Harris. Apparently, Hall was living with the appellant in Little Rock at the time of the murders.

The homicide investigation later revealed that Hall ran up to a parked vehicle after the shooting and asked the occupants, who were coincidentally smoking marijuana, for a ride. In fact, one of the occupants, Jarvis McKeller, testified that he heard the shots just before Hall appeared and started banging on the car window, begging for a ride. Hall even offered to pay the driver two-hundred dollars ($200) for a ride to the appellant's house, where he was living at the time. McKeller also testified that Hall had "spatters of blood" on his shirt and seemed a bit nervous and shaky. When they arrived at the appellant's house, Hall told them to get out of the vehicle and go inside. While

inside the house, McKeller saw two other individuals besides Hall, and he later identified the appellant as being one of them. Furthermore, McKeller overheard a conversation between Hall and the appellant about "who got the money." Evidence was presented at trial that the victims had $25,000 cash in a Wal-Mart bag in the back of their vehicle.

Johilda Harris, the appellant's aunt, and her husband Michael Ford also testified that several weeks after the murders they overheard the appellant and his father discussing the murder. Specifically, Johilda Harris testified at trial that the appellant told her that he had "shot the white boy."

Chandra Baskin testified that several weeks prior to the shooting she overheard a conversation between the appellant and Hall about a robbery they were planning. In that conversation, Baskin stated Hall told the appellant that the robbery would take place in the alleyway off of 12th Street. She also heard Hall tell the appellant that he would be standing back in some bushes when the robbery took place. On May 3, 2002, the day of the murders, she and Hall spent the night at a motel. The next morning Hall left and came back with a newspaper article about the double murders. Later that day, Baskin went with Hall back to the appellant's house and then to the crime scene. She stated they stopped the car a few blocks from the location, and Hall got out of the car and jumped a fence. Within five minutes, he returned to the car and they drove to Fordyce. About two weeks later, Baskin overheard another conversation between the appellant and Hall in which the appellant asked Hall if he found the gun he had used. In that conversation, Baskin also heard the appellant ask whether the police could link them to the double homicide.

Finally, cell phone records linked Hall's cell phone to the victims' cell phone. Detective Smith testified that on the day of the murders Tedder called Hall at 11:33 a.m. Hall returned the call at 11:53 a.m. and made another call to Tedder at 11:55 a.m. Later that afternoon, Hall received a call from Tedder at 3:51 p.m., and within a few minutes, at approximately 4:05 p.m., Tedder and Dison were shot and killed.

The State charged the appellant with two counts of capital murder. Prior to trial, the appellant filed two motions in limine. The first motion requested that McKeller's pretrial identification of the appellant be suppressed on the ground that the identification procedure was unduly suggestive. In the second motion, the appellant sought to prohibit Chandra Baskin from testifying about

a conversation she heard two weeks before the shooting in which Hall and the appellant talked about planning a robbery. The circuit court denied both motions, and the jury subsequently convicted the appellant of both counts of capital murder. From the judgment of conviction, he now brings this appeal.

For his final point on appeal, the appellant claims that the circuit court erred when it denied his motions for directed verdict. Because the appellant's claims, based on the denial of a directed verdict, implicate his right to be free from double jeopardy, we consider them first, although it is his third and final point on appeal. *Hamm v. State*, 365 Ark. 647, 232 S.W.3d 463 (2006). A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Coggin v. State,* 356 Ark. 424, 156 S.W.3d 712 (2004). This court has long held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

The State charged the appellant with two counts of capital murder on the theory that he and Hall attempted to rob the victims, and in the course of doing so, killed both men. The relevant criminal statutes provide in pertinent part as follows:

> A person commits capital murder if . . . [a]cting alone or with one (1) or more other persons, he or she commits or attempts to commit . . . robbery . . ., and in the course of and in furtherance of the felony or in immediate flight therefrom, he or she or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life . . . .

Ark. Code Ann. § 5-10-101(a)(1) (Repl. 2006).

> A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another.

Ark. Code Ann. § 5-12-102(a) (Repl. 2006). Aggravated robbery occurs when a person "commits robbery . . . and he: (1) is armed with

a deadly weapon . . . or (2) [i]nflicts or attempts to inflict death or serious physical injury upon another person." Ark. Code Ann. § 5-12-103(a) (Repl. 2006).

In keeping with our standard of review, as well as the above-cited statutes, we must conclude that there is substantial evidence to support the appellant's conviction. As explained earlier, McKeller testified that on the day of the murder, after giving Hall a ride to the appellant's house, he overheard a conversation between Hall and the appellant about "who got the money." Evidence was presented at trial that the victims had $25,000 cash in a Wal-Mart bag in their vehicle. Moreover, Chandra Baskin testified that a couple of weeks prior to the shooting she overheard the appellant and Hall talk about a robbery they were planning. In that conversation, Hall indicated to the appellant that the robbery would take place in the alleyway off of 12th Street. Baskin also related that Hall told the appellant he would be standing back in some bushes when the robbery took place. Thus, the evidence clearly supports the jury's verdict that the appellant or his accomplice committed or attempted to commit robbery.

Furthermore, the appellant's aunt, Johilda Harris, and her husband, Michael Ford, testified that several weeks after the murders they overheard the appellant and his father talking about the murders. According to Johilda Harris, the appellant told her that he had "shot the white boy." Baskin confirmed that on May 3, 2002, she spent the night in a motel with Hall, and the next morning he left and came back with a newspaper article about the double murders. Later that day, she went with Hall back to the appellant's house and then to the crime scene, where Hall got out of the car and jumped a fence. About five minutes later, he got back in the car and they drove to Fordyce. Finally, about two weeks later, Baskin overheard another conversation between the appellant and Hall in which the appellant asked Hall if he found the gun he had used. In that conversation the appellant also asked whether the police could link them to the double homicide. In sum, the above evidence supports the jury's verdict that the appellant or an accomplice committed the murders of Tedder or Dison.

In the appellant's brief on this point, he essentially attempts to question the credibility of the State's witnesses. However, in conducting a sufficiency-of-the-evidence review, we view the evidence presented at the trial in the light most favorable to the State *and consider only the evidence that supports the verdict. Stone v. State,*

*supra.* Accordingly, because there is substantial evidence that the appellant or an accomplice committed or attempted to commit robbery, and, in the course of doing so, that he or an accomplice caused the deaths of Dison or Tedder, we affirm the circuit court's rulings on the appellant's directed-verdict motions.

For the next point on appeal, the appellant maintains that the pretrial-identification process was unduly suggestive. Specifically, he contends that Detective Ronnie Smith was unduly suggestive when he asked Jarvis McKeller to identify the appellant in a photographic lineup. As mentioned earlier, the appellant sought to suppress McKeller's pretrial identification on the ground that the identification procedure was unduly suggestive, but the trial court denied the motion.

Trial courts are given wide discretion in evidentiary rulings, and there must be an abuse of that discretion to justify reversing a trial court's decision. *Davis v. State*, 365 Ark. 634, 232 S.W.3d 476 (2006). Moreover, an appellate court will not reverse a trial court's evidentiary ruling absent a showing of prejudice. *Id.* As a general rule, the appellant has the burden to prove that a pretrial identification was suspect. *Hayes v. State*, 311 Ark. 645, 846 S.W.2d 182 (1993). For example, even if a photographic lineup process is suggestive, the trial court may determine that, under the totality of the circumstances, the identification was sufficiently reliable. *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002). Nevertheless, an objection to a pretrial photographic identification is not preserved unless there is a contemporaneous objection to the witness's in-court identification at trial. *Id.*

While the appellant did file a motion to suppress the pretrial identification, he failed to object when McKeller made an in-court identification at trial. Thus, because there was no contemporaneous objection to the in-court identification, we conclude that the issue of whether McKeller's pretrial identification was unduly suggestive is not properly preserved for appeal. *Id.*

Finally, the appellant contends that circuit court erred in denying his motion in limine to prohibit Chandra Baskin from testifying about a conversation she heard two weeks before the shooting in which Hall and the appellant were planning a robbery. Before the trial, the appellant filed a motion in limine, arguing that Baskin's testimony was inadmissible pursuant to Ark. R. Evid. 401 and 403. On appeal, the appellant contends that Baskin's testimony should have been excluded as being irrelevant under Ark. R. Evid.

401 (2005); and even if it was relevant, that it should have been excluded because the danger of unfair prejudice to the appellant substantially outweighed any probative value under Ark. R. Evid. 403 (2005); and that the testimony should have been excluded as evidence of a prior bad act under Ark. R. Evid. 404(b) (2005). This argument is without merit.

■ Once again, trial courts are given wide discretion in evidentiary rulings, and there must be an abuse of that discretion to justify reversing a trial court's decision. *Davis v. State*, 365 Ark. 634, 232 S.W.3d 476 (2006). Moreover, an appellate court will not reverse a trial court's evidentiary ruling absent a showing of prejudice. *Id.*

Rule 401 of the Arkansas Rules of Evidence states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Ark. R. Evid. 401 (2005). Furthermore, Ark. R. Evid. 403 requires that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In the instant case, Baskin's testimony was relevant because her account of the conversation between the appellant and Hall two weeks prior to the shooting put the appellant at the scene of the crime. In fact, according to Baskin, both men described the location and details of the robbery. Moreover, pursuant to Ark. R. Evid. 403, we cannot conclude that the circuit court abused its discretion in concluding that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

■ As his last argument under this point, the appellant claims that Baskin's testimony was inadmissible under Ark. R. Evid. 404(b). Yet, a review of the motion in limine reveals that the appellant never made a Rule 404(b) argument to the trial court. Thus, we are precluded from addressing this argument for the first time on appeal. Consequently, we affirm the circuit court's admission of Baskin's testimony.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by

either party that were decided adversely to the appellant, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.