2009 Ark. 566

**Gregory Christopher DECAY,
Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1259.**

Supreme Court of Arkansas.

Nov. 12, 2009.

Montgomery, Adams & Wyatt, PLC, by: Dale E. Adams, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: LeaAnn Irvin, Ass't Att'y Gen., and Laura K. Shue, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

Appellant Gregory Decay appeals from the judgment and commitment order of the Washington County Circuit Court, convicting him of two counts of capital murder and sentencing him twice to death. Decay argues fourteen points on appeal: (1) the circuit court erred in failing to suppress Decay's statements to law enforcement; (2) the circuit court erred in failing to suppress telephone calls made by Decay from the Washington County Detention Center; (3) the circuit court improperly excused four jurors for cause; (4) the circuit court erred by refusing to submit a jury instruction regarding Decay's good character; (5) the circuit court erred in prohibiting testimony and evidence of the victims' lives during the guilt phase of trial; (6) the circuit court erred by allowing the State to present a photograph of Decay holding an assault rifle; (7) the circuit court erred in admitting the testimony of a third-party statement into evidence; (8) the circuit court erred by allowing the State to obtain two separate sentences of death for the same aggravating circumstance; (9) the circuit court erred in rejecting Decay's proffered jury instruction regarding victim-impact testimony; (10) the jury erred by failing to find evidence presented that constituted mitigating factors; (11) the circuit court failed to limit victim-impact testimony presented by the State; (12) the circuit court erroneously limited evidence of mitigation; (13) the circuit court erred by allowing the prosecutor to make improper statements during closing arguments; and, finally, (14) this court should reverse for other issues after conducting a mandatory review pursuant to Rule 10 of the Arkansas Rules of Appellate Procedure–Criminal. We find no error and affirm.

Decay does not challenge the sufficiency of the evidence; therefore, it is not neces-

sary to recite the facts in great detail. *See Osburn v. State*, 2009 Ark. 390, 326 S.W.3d 771. On the morning of April 3, 2007, Janis Jones, mother of Kevin Jones, found Kevin and his girlfriend, Kendall Rice, shot and dead in their apartment. During the course of the investigation, law enforcement officers came into contact with Decay. After being interviewed, Decay eventually confessed his responsibility in the shooting of Kevin Jones and Kendall Rice. He was tried by a jury on April 21, 2008.

During the jury trial, the State introduced, among other evidence, two oral statements and one written statement made by Decay to detectives and two recorded telephone conversations that Decay had with his family while incarcerated at the Washington County jail. The State's theory of the case was that Decay knew the victims because he had sold them drugs, Decay believed the victims had burglarized his apartment, and Decay killed the victims out of revenge. The jury found Decay guilty of two counts of capital murder and sentenced him to death on each count. It is from those convictions and sentence that Decay now appeals.

## I. *Suppression of Statements*

Decay's first argument is that the circuit court erred in denying his motions to suppress his April 4, 2007 statement and his April 6, 2007 statement because they were unlawfully obtained through a lengthy and accusatory interview. He further argues that his written statement was unlawfully obtained through a false statement from one of the detectives, Detective French, made to induce Decay to give a confession. The State alleges that these issues are not preserved or were not properly supported on appeal. Alternatively, the State argues that Decay's arguments are without merit.

In reviewing the denial of a motion to suppress a custodial statement, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *See Reese v. State*, 371 Ark. 1, 262 S.W.3d 604 (2007). When we review a circuit court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances. *See id.* We will reverse the circuit court only if its decision was clearly against the preponderance of the evidence. *See Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005).

No argument is developed on appeal as to Decay's April 4 statement. Therefore, we do not consider it on appeal. This court does not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *See Davis v. State*, 2009 Ark. 478, 348 S.W.3d 553.

Decay argues that his April 6 statement was unlawfully obtained because it was only made after an intensive and accusatory interview and because of a false statement made by the detective suggesting that a jury might be more favorable towards a person who gave a statement. Decay further alleges that his written statement was a result of false statements made by the detective. However, these arguments were not presented below in the motion to suppress, nor at the suppression hearing. It is well settled that where an appellant does not advance an argument below as part of the motion to suppress, we will not consider it for the first time on appeal. *See Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001).

## II. *Telephone Calls*

■ Next, Decay contends that the circuit court erred in failing to suppress the telephone calls that he made from the Washington County Detention Center because he argues they were monitored and recorded without his consent. While he admits that federal courts have held that an inmate impliedly consents to having his telephone conversations taped, he contends that the lack of policy or procedure in place to exempt privileged telephone conversations between attorneys and clients makes the instant case distinguishable. The State responds that the circuit court did not err in admitting that evidence because the transcripts of the telephone calls that were admitted clearly indicate that all parties to the conversation [5]were apprised that the call may be recorded or monitored and, therefore, there was not a reasonable expectation of privacy.

■ A decision to admit or exclude evidence is within the sound discretion of the circuit court. *See Rounsaville v. State,* 374 Ark. 356, 288 S.W.3d 213 (2008). A circuit court abuses its discretion when in making a decision it acts improvidently, thoughtlessly, or without due consideration. *See Sauerwin v. State,* 363 Ark. 324, 214 S.W.3d 266 (2005).

Here, the telephone calls that were admitted into evidence were two calls made by Decay to his family, both placed on April 7, 2007. During the pretrial suppression hearing, Jak Kimball, the Information Technology Manager at the Washington County Sheriff's Office, testified that inmates must use the registration process to use the telephones. He stated that each time an inmate picks up the handset during the registration process, the first thing they hear is an automated voice informing them that the call is monitored and may be recorded. Kimball also testified that every call an inmate subsequently makes also begins with a recording stating that the call may be recorded. He did not think that the person on the other end of the line from the inmate also heard the same recording, but admitted he did not know for sure. The transcripts of Decay's telephone calls indicate that before any conversation began, there was an automated voice that stated "This is AT & T[. T]his call may be recorded or monitored. I have a collect call from." There was then a pause for Decay to state his name. Therefore, not only did Decay receive the warning that his call might be recorded or monitored, the individual on the other end of the line that had to accept his [6]collect call did as well.

There is not an Arkansas case directly on point; however, the Eighth Circuit has ruled on this specific issue and, while not binding on our court, we find it highly persuasive. The Eighth Circuit has held that an inmate impliedly consents to the monitoring of his calls, even despite an inability to refuse such monitoring, if he was made aware of the prison's monitoring. *See United States v. Horr,* 963 F.2d 1124 (8th Cir.1992). Again, in *United States v. Morin,* 437 F.3d 777 (8th Cir. 2006), the court stated that when an inmate had been given a prisoners' handbook that informed prisoners that jailhouse calls would be monitored and there were also signs above the phones in the prison warning inmates of that fact, his recorded conversations were admissible at trial. In the instant case, an automated recording informed Decay during the registration process that the call may be monitored or recorded. Additionally, a recording again informed Decay, along with the individual to whom he placed the call, that the call may be monitored or recorded before their conversation could begin. Therefore, Decay was made aware that his telephone calls were monitored and re-

corded, he had no reasonable expectation of privacy, and we cannot say that the circuit court abused its discretion in admitting transcripts of those telephone conversations into evidence.

### III. *Excusals for Cause*

■ For his third point on appeal, Decay alleges that by allowing four jurors to be excused for cause without first determining if they could set aside their personal philosophies and follow the law, the circuit court violated his right to a cross-section of the community for a [7]jury and his right to a fair trial. The State contends that Decay did not preserve this issue for appeal.

We must agree that this issue is not preserved for our review. The record reveals that Decay did not object below after any of the four potential jurors were excused. This court has repeatedly stated that we will not consider arguments, even constitutional ones, raised for the first time on appeal. *See Phavixay v. State*, 2009 Ark. 452, 352 S.W.3d 311.

### IV. *Jury Instruction*

■ Decay next alleges that the circuit court erred by refusing to submit a jury instruction regarding his good character. The State avers that the circuit court did not err because Decay's character was not an issue in the case as the defense rested its case after the close of the State's case without putting forth any evidence.

■ This court has stated that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *See Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). We will not reverse a circuit court's decision to give or reject an instruction unless the court abused its dis-

cretion. *See Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

In trial, the defense chose to rest its case after the close of the State's case without presenting any evidence. Therefore, no evidence was offered to establish Decay's good character. For this reason, there was insufficient evidence to warrant an instruction regarding Decay's good character, and we cannot say that the circuit court abused its discretion by [8]refusing to give it.

### V. *Evidence Regarding Victims*

■ Decay further argues that the circuit court erred by not allowing testimony regarding toxicology reports that evidenced drugs in the victims' blood streams during the guilt phase of trial. The State argues that the circuit court did not abuse its discretion by prohibiting the evidence, or, alternatively, that the error was harmless.

■ The most general rule of evidence is that all relevant evidence is admissible. Ark. R. Evid. 402 (2009). The circuit court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the circuit court's decision unless it constitutes a clear error or a manifest abuse of discretion. *See Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004).

Before trial, the State filed a motion in limine to exclude testimony regarding both victims' personal lives during the guilt phase of trial. The circuit court suggested that the parties come to an agreement about what testimony or evidence could be elicited regarding the victims, specifically regarding the evidence of drug use and the toxicology reports of the victims. An agreement was originally made that the toxicology reports would not be addressed. However, during trial, Decay's counsel argued that the door had been opened for

the admission of that evidence because the State elicited testimony about whether illegal drugs were found in the victims' apartment. The circuit court ruled that because there had been an agreement to not address the toxicology reports, it would not be permitted.

Here, while the circuit court ruled, it did so on the basis of a prior agreement rather than making a proper finding of whether or not the toxicology reports had become relevant and admissible. Therefore, the circuit court erred. However, Decay fails to show how he was prejudiced by that error, and we fail to find any such prejudice. An appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *See Harris v. State,* 366 Ark. 190, 234 S.W.3d 273 (2006).

## VI. *Photograph of Defendant*

Next, Decay contends that the circuit court erred by admitting a photograph of him holding an assault rifle, as he claims that such evidence was more prejudicial than probative. The State argues that the circuit court did not abuse its discretion in admitting the evidence, or, alternatively, that any error was harmless.

While all relevant evidence is admissible, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2009). This court has noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *See Rounsaville, supra.* Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *See id.*

Additionally, we have a well-settled standard of review regarding photographs. As with other matters pertaining to the admissibility of evidence, the admission of photographs is a matter left to the sound discretion of the circuit court, and we will not reverse absent an abuse of that discretion. *See Blanchard v. State,* 2009 Ark. 335, 321 S.W.3d 250. When photographs are helpful to explain testimony, they are ordinarily admissible. *See id.* Moreover, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. *See id.* Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *See id.*

Decay had filed a motion in limine to prohibit reference to irrelevant firearms, which asserted that the gun in the photograph at issue was not relevant to the crime as the State's theory was that the murder weapon was a .40–caliber handgun, not shown in the photograph, and that the prejudicial effect of the photograph would greatly outweigh any probative value. Decay further asserted that the photograph would produce confusion for the jury and that it constituted cumulative evidence and inflammatory materials. The circuit court held that the evidence was more probative than prejudicial, but prohibited the State from using the term "street sweeper" when referencing the gun in the photograph.

The State argues here, as it did below, that the photograph's probative value out-

weighed the prejudice because it helped explain Decay's motive for killing the victims and corroborated Decay's statements to police. The record reveals that Decay did claim in his oral and written statements to police that he owned an assault rifle, the one in the photograph, and that it was stolen. Decay believed the rifle was stolen by the victims. Therefore, the photograph did help illustrate Decay's statements and helped to establish his motive. For these reasons, we cannot say that the circuit court abused its discretion in admitting the photograph.

## VII.  *Third–Party Statement*

■ During trial, the circuit court also allowed certain testimony from Detective Paul Shepard over Decay's objection. In doing so, Decay alleges that the circuit court violated his Sixth Amendment right to confront witnesses against him. The State contends that the testimony was not hearsay and, therefore, there was not a violation of the Confrontation Clause.

Again, the decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *See Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008).

Detective Paul Shepard testified at trial that "the investigation had led us to an individual that told us that Mr. Decay told him that he committed the murders." Although Decay made a hearsay objection, the State argued that the information was not being used to try to prove that Decay committed the murders, but why the investigation turned to Decay. The record reveals that this testimony was in response to a line of questioning from the State regarding why Decay was not arrested on April 4, 2007, but was arrested on April 6, 2007. Therefore, as the State contended, the testimony went to the course of conduct of the officers and why Decay was arrested, not to prove the truth of the matter asserted in the statement.

■ Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2009). The circuit court correctly held that Shepard's testimony was not hearsay, as it was not offered to prove the truth of the matter asserted. Therefore, Decay's argument under the Confrontation Clause is misplaced, as the admission of testimony that is not hearsay raises no Confrontation Clause concerns. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (observing that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted); *see also United States v. Tucker*, 533 F.3d 711 (8th Cir.2008) (noting that testimonial statements offered for purposes other than their truth do not implicate the Confrontation Clause).

## VIII.  *Death Sentences & Aggravating Factors*

Decay continues by alleging that it was unlawful for the State to charge the killings of the victims as separate counts of capital murder and to treat each homicide as aggravated by the other because it constituted multiple punishments for the same offense. The State avers that Decay's due-process and double-jeopardy rights were not violated by allowing the State to follow the capital statutory scheme and present evidence of one killing as an aggravating circumstance for the other and vice versa. The State urges that the death of one person surely cannot be viewed as the duplicate of a separate individual's death.

In order to impose a sentence of death for capital murder, the jury must find beyond a reasonable doubt that at least one aggravating circumstance exists. *See* Ark.Code Ann. § 5–4–603 (Supp.2009); *see also State v. Fudge,* 361 Ark. 412, 206 S.W.3d 850 (2005). Arkansas Code Annotated section 5–4–604(4) (Repl.2006) instructs that a permissible aggravating circumstance is when "the person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim or caused the death of more than one (1) person in the same criminal episode."

The aggravating circumstance that the State presented to the jury in the capital murder of victim Kevin Jones was that Decay caused the death of an additional person, Kendall Rice. The aggravating circumstance that the State presented to the jury in the capital murder of victim Kendall Rice was that Decay caused the death of an additional person, Kevin Jones. As noted, Decay argues that the use of each homicide as an aggravating circumstance of the other is a violation of the requirement that a capital scheme must narrow the number and class of persons at risk of execution and violated his due-process and double-jeopardy rights. This argument was specifically rejected by the Eighth Circuit in *Cox v. Norris,* 133 F.3d 565 (8th Cir.1997).

A capital-punishment scheme must genuinely narrow the class of persons eligible for the death penalty and must justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder. *See id.* (citing *Perry v. Lockhart,* 871 F.2d 1384 (8th Cir.1989)). This requirement may be satisfied in two ways—either a state legislature may explicitly restrict the definition of capital murder, or a jury may perform the narrowing function during the penalty phase by ascertaining whether any aggravating circumstances exist. *See id.*

When Arkansas Code Annotated section 5–10–101(a)(4), the statute for capital murder, which requires that a person cause the death of another with a "premeditated and deliberate purpose," is compared to section 5–10–102, the statute for first-degree murder, which requires only "a purpose of causing the death of another person" or that a person "knowingly causes the death of a person fourteen (14) years of age or younger," it is clear that the capital scheme in Arkansas does genuinely narrow the class of persons eligible for the death penalty and justifies the imposition of a more severe sentence on a defendant compared to others found guilty of murder. Additionally, the class is not only narrowed by the application of aggravating circumstances by the jury pursuant to section 5–4–604, but also the requirement of section 5–4–603 that the jury find that the aggravating circumstance or circumstances outweigh any mitigating factors and justify a sentence of death beyond a reasonable doubt. *See Cox, supra; see also Perry, supra.*

While Decay further argues that the use of each homicide as an aggravating circumstance constituted multiple punishments for the same offense, that argument was rejected by the Eighth Circuit in *Perry, supra,* because of the United States Supreme Court's holding in *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The Supreme Court held that although the aggravating circumstance used was also an element of the underlying felony for which the defendant was convicted, the state's legislature had narrowed the class of defendants eligible for the death penalty sufficiently to pass constitutional muster by defining which homicides would be considered first-degree murder. Therefore, the duplication of an

element of a capital offense by one or more aggravating circumstances does not render the Arkansas death-penalty scheme unconstitutional. *See Cox v. Norris,* 133 F.3d 565 (8th Cir.1997); *Wainwright v. Lockhart,* 80 F.3d 1226 (8th Cir.1996), *cert. denied,* 519 U.S. 968, 117 S.Ct. 395, 136 L.Ed.2d 310 (1996); *Perry v. Lockhart,* 871 F.2d 1384 (8th Cir.1989).

### IX. *Proffered Jury Instruction on Victim–Impact Testimony*

■ For his next point, Decay asserts that the circuit court erred by refusing to submit a jury instruction on victim-impact testimony. The State avers that the circuit court properly denied Decay's proffered jury instruction.

■ Our case law is clear that a party is entitled to a jury instruction when it is a correct statement of law and when there is some basis in the evidence to support giving the instruction. *See Jones v. State,* 336 Ark. 191, 984 S.W.2d 432 (1999). Moreover, a circuit court is required to give a jury instruction if there is some evidence to support it. *See id.* A circuit court should not use a nonmodel instruction unless it finds that the model instruction does not accurately reflect the law. *See id.* We will not reverse a circuit court's decision to give or reject an instruction unless the court abused its discretion. *See Clark v. State,* 374 Ark. 292, 287 S.W.3d 567 (2008).

Decay proffered a nonmodel jury instruction to the circuit court that stated, "[y]ou shall not consider victim-impact evidence as an aggravating circumstance, but the victim-impact evidence may be considered by you when making your decision." The State argued that the Arkansas Model Jury Instructions (AMI) were sufficient and the circuit court agreed. Decay argues on appeal that juries do not understand the role of victim-impact evidence or

how it works in the sentencing scheme and that an additional instruction was needed. However, the instruction proffered by Decay did nothing more than to inform the jury that they may not consider victim-impact evidence as an aggravating circumstance. The instructions given to the jury made that clear. Before the jury was sent to determine Decay's sentence, the circuit judge instructed them on the appropriate forms that they would use and what procedures they were to follow. As part of those instructions, the circuit judge read from AMI Crim.2d 1008 and stated:

> Form 1, which will be handed to you later, deals with aggravating circumstances. The appearance of any particular aggravating circumstances on the form does not mean that it actually existed in this case. These are specified by law *and are the only aggravating circumstances that you may consider.*

(Emphasis added.)

This court has previously held that although a proffered instruction may be a correct statement of the law, it is unnecessary to give it when its substance is covered by other instructions. *See Jones, supra.* Therefore, the circuit court did not abuse its discretion by finding the model instructions sufficient and refusing to give the proffered instruction.

### X. *Mitigating Factors*

Decay further asserts that the jury erred when it failed to find there was evidence presented that constituted mitigating factors. The State alleges that the jury properly considered the mitigating evidence, but permissibly refused to believe it or find that a mitigating circumstance existed.

We have previously held that a jury is not required to find a mitigating circumstance just because the defendant puts

before the jury some evidence that could serve as the basis for finding the mitigating circumstance. *See Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998). In addition, we have recognized that a jury may generally refuse to believe a defendant's mitigating evidence; however, when there is no question about credibility and when objective proof makes a reasonable conclusion inescapable, the jury cannot arbitrarily disregard that proof and refuse to reach that conclusion. *See Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003).

The defense presented nine proposed mitigating circumstances to the jury. Decay alleges on appeal that the jury ignored the following seven uncontested, mitigating circumstances: (1) Decay's youth at the time of the crime; (2) that Decay came from a divorced home; (3) that Decay demonstrated that he is a caring and giving person by his relationships with his family; (4) that Decay cooperated and aided in the investigation of the death of the victims; (5) that Decay confessed to his participation in the crime; (6) that Decay had no significant history of prior criminal activity; and (7) that Decay formed loving relationships with his family.

First, it is clear from the record that the jury at least considered all nine factors because they correctly indicated for each factor whether some of the jury members found the factor to exist, all of the jury members found the factor to exist, or none of the jury members found the factor to exist. Furthermore, the jury alone determines what weight to give evidence presented on mitigating circumstances and may reject it or accept all or any part of it that the jurors believe to be true. *See Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007).

Regarding Decay's youth,[1] this court has held that "[a]ny hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances." *Giles v. State*, 261 Ark. 413, 421, 549 S.W.2d 479, 483 (1977). In *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), we held that the jury did not have to find an eighteen year old's youth was a mitigating factor. Therefore, simply because Decay's age was not a fact in question, the jury did not have to find that it constituted a mitigating factor. The same can be said for the fact that Decay came from a divorced home. The effect of a divorce on a defendant's childhood is also to be considered as relative and a factor that is weighed in the light of varying conditions and circumstances. Simply because there was uncontested testimony regarding Decay's lack of a father-figure, the jury did not have to find that it constituted a mitigating factor.

Only the testimony of Decay's family and a family friend could have established that he was a caring and giving person or that he had established loving relationships with his family. Therefore, the jury was faced with neither indisputable credibility nor objective proof that made a reasonable conclusion inescapable for those proposed mitigating factors. While Decay also believes a lack of significant prior criminal activity was an uncontested mitigating factor, certain evidence presented during trial could have easily led the jury to reasonably believe that Decay was involved with using and selling illegal drugs.

Decay further contends that it was uncontested that he cooperated in the investigation and that he confessed to the crime.

---

1. The record reveals that Decay was twenty-one years of age at the time of the crime.

While there was evidence that Decay eventually wrote a confession and helped law enforcement with certain aspects of the investigation from that point on, substantial evidence was also presented that Decay denied having been involved and lied to the police until they closed in on him as a suspect in their investigation. Therefore, again, the jury was not presented with evidence as to those proposed mitigating circumstances that would have made a reasonable conclusion inescapable. For all of these reasons, we find no error was committed.

### XI. *Victim–Impact Evidence*

■ Decay next argues that the circuit court erred by allowing certain victim-impact evidence that was irrelevant and unduly prejudicial. The State alleges that this argument was not preserved and, alternatively, that the circuit court did not err.

Indeed, we are foreclosed from reaching the merits of this issue because Decay did not object to any portion of the victim-impact evidence. This court has been adamant in holding that we will not consider arguments and issues not objected to at trial and raised for the first time on appeal. *See Halford v. State,* 342 Ark. 80, 27 S.W.3d 346 (2000).

### XII. *Limitation of Mitigation Evidence*

Decay also asserts that the circuit court violated his right to present mitigating testimony when it denied his family the right to express its apologies or sympathies to the victims' families. The State argues that the testimony excluded was not evidence of a mitigating circumstance, and we agree.

■ During the testimony of both Darren Decay, Decay's brother, and Jada Decay, Decay's sister, the State objected to testimony expressing their apologies to the families of the victims. The circuit court sustained the objections. However, Darren Decay did in fact state during his testimony, "[w]e're sorry" and "[w]e're going through pain and grief just like you are." Decay argues that by limiting that testimony, the circuit court violated his right to present evidence of his remorse as a mitigating circumstance. While Decay's remorse was a proposed mitigating factor, the feelings of his family did not constitute evidence of his personal remorse. Therefore, the circuit court's decision to limit that testimony did not violate Decay's right to present evidence of a mitigating circumstance.

### XIII. *Prosecution's Improper Statements*

■ Decay then argues that certain statements made by the prosecutor during closing arguments should not have been allowed. The State alleges that the issue is not preserved for our review. Alternatively, the State contends the statements were not improper or constituted harmless error.

■ During closing arguments at the penalty stage of trial, the State argued that Decay had shown no remorse for his actions. Decay contends this violated his right not to testify. However, there was no objection made to the circuit court regarding this closing argument. To preserve a challenge to statements made during closing argument, this court requires "a timely objection, made at the time the alleged error occurs, so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury." *Williams v. State,* 374 Ark. 282, 292, 287 S.W.3d 559, 566 (2008) (quoting *Butler Mfg. Co. v. Hughes,* 292 Ark. 198, 202, 729 S.W.2d 142, 144 (1987)). There-

fore, this issue was not preserved for our review.

## XIV. *Rule 10*

We take this opportunity to note that while we have held that several of Decay's arguments on appeal have not been preserved for our review, we are required to review certain issues whenever a sentence of death is imposed pursuant to Rule 10 of the Arkansas Rules of Appellate Procedure—Criminal. Rule 10 provides in pertinent part:

(b) Mandatory review. Whenever a sentence of death is imposed, the Supreme Court shall review the following issues in addition to other issues, if any, that a defendant may enumerate on appeal. Counsel shall be responsible for abstracting the record and briefing the issues required to be reviewed by this rule and shall consolidate the abstract and brief for such issues and any other issues enumerated on appeal. The Court shall consider and determine:

(i) pursuant to Rule 4–3(h) [2] of the Rules of the Supreme Court and Ark.Code Ann. § 16–91–113(a), whether prejudicial error occurred;

(ii) whether the trial court failed in its obligation to bring to the jury's attention a matter essential to its consideration of the death penalty;

(iii) whether the trial judge committed prejudicial error about which the defense had no knowledge and therefore no opportunity to object;

(iv) whether the trial court failed in its obligation to intervene without objection to correct a serious error by admonition or declaring a mistrial;

(v) whether the trial court erred in failing to take notice of an evidentiary error that affected a substantial right of the defendant;

(vi) whether the evidence supports the jury's finding of a statutory aggravating circumstance or circumstances; and

(vii) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Ark. R.App. P.-Crim. 10(b) (2009).

For his final point, Decay sets forth several issues that he believes warrant reversal of his convictions and should specifically be reviewed by this court pursuant to Ark. R.App. P.-Crim. 10. Decay alleges that: (1) the circuit court failed in its obligation to intervene without objection to correct a serious error during jury deliberations by admonition or declaring a mistrial; (2) the circuit court failed to take notice that no instruction regarding 404(b) was given; (3) the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and, (4) there was cumulative error made by the circuit court.

Pursuant to Rule 10, we have reviewed the entire record, including those issues that we have held were not properly preserved for appeal [3] and those matters spe-

---

**2.** We note that the current rule regarding this court's review of errors for prejudice in death or life imprisonment cases has changed to Arkansas Supreme Court Rule 4–3(i).

**3.** The following issues argued by Decay were not properly preserved below for our review: (1) the suppression of Decay's custodial state-

ments; (2) the four jurors being excused for cause; (3) the admission of certain victim-impact evidence; and (4) the alleged improper statements by the prosecution during closing arguments. However, those issues were reviewed for reversible error pursuant to Rule 10, along with the entire record.

cifically pointed to by Decay, and we hold that no reversible error exists. We have further reviewed the record pursuant to Arkansas Supreme Court Rule 4–3(i) (2009), and no reversible error has been found. For the foregoing reasons, we affirm the orders of conviction and sentence.

Affirmed.

BROWN, J., concurring.

ROBERT L. BROWN, Justice, concurring.

I concur in the result. I write, however, to raise a concern. Our Criminal Code permits victim-impact evidence in capital cases, if it is relevant to punishment. Ark. Code Ann. § 5–4–602(4)(A)(iii) (Repl.2006). Under *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), even though victim-impact evidence may be introduced, if it is so unduly prejudicial that it renders the trial unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. It is for the circuit judge to decide if the testimony is relevant or if it crosses the line and is unduly prejudicial. The problem is that the line between permissible and prejudicial is vague and undefined. Neither this court nor the General Assembly has provided the trial bench with guidelines for the admission of such evidence.

The State of Oklahoma has addressed the issue of victim-impact evidence and its Due Process Clause implications. There, the State must file a notice of intent to produce victim-impact evidence and detail the evidence it seeks to produce. *See Cargle v. State,* 909 P.2d 806, 828 (Okla.Crim. App.1995), *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996). Prior to offering any victim-impact evidence, the trial court is required to hold an in camera hearing to determine the admissibility of the proposed evidence. *Id.* The State is then limited to the evidence listed in its notice, and no other victim-impact evidence may be admitted. *Id.* Furthermore, no victim-impact evidence is admitted until evidence of one or more aggravators is in the record. *Id.* Oklahoma has also expressly defined what victim-impact evidence is admissible by statute. Okla. Stat. tit. 22, § 984 (2003). A "victim-impact statement" is "information about the financial, emotional, psychological, and physical effects of a violent crime." *Id.* Only the victim and members of the immediate family are permitted to present victim-impact testimony. *Id.*

In my concurring opinion in *Hicks v. State,* 327 Ark. 727, 940 S.W.2d 855 (1997), over ten years ago, I expressed my concern over the lack of guidance for the introduction of victim-impact evidence in Arkansas. I also called on the General Assembly or this court to fashion criteria for the introduction of such evidence. Trial courts still lack concrete guidelines by which to judge the relevance or prejudicial nature of victim-impact testimony. This critical issue needs to be addressed, and I commend the issue to this court's Criminal Practice Committee for its consideration.