Cite as 2019 Ark. 332

# SUPREME COURT OF ARKANSAS

**No.** CR–19–248

| | |
|---|---|
| GERALD HERBERT LOWERY | **Opinion Delivered** November 14, 2019 |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT |
| V. | [NO. 46CR-18-46] |
| STATE OF ARKANSAS | |
| | HONORABLE CARLTON D. JONES, |
| APPELLEE | JUDGE |
| | AFFIRMED. |

**JOSEPHINE LINKER HART, Justice**

Gerald Lowery was convicted by a Miller County jury of rape and second-degree sexual assault. He was sentenced to consecutive terms of life and 240 months in the Arkansas Department of Correction. On appeal, Lowery argues that the circuit court erred in (1) allowing testimony from his daughter under the pedophile exception and (2) allowing the State to inquire on cross-examination about a disputed police report. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2).

On January 24, 2018, Lowery was charged by information for the rape and second-degree sexual assault of T.L. The offenses were alleged to have occurred during a time period from the fall of 2004 to the spring of 2005, when T.L. was less than fourteen years old.

Because Lowery does not challenge the sufficiency of the evidence, only a brief summary of the facts supporting his conviction is necessary. According to T.L.'s mother, Rhonda Lamb, she moved with to Texarkana, Arkansas, in 2004, when T.L. was six years

old. Lamb and T.L. shared an apartment with Lowery and his girlfriend, Roshuanda Gant. Lamb, Gant, and Lowery worked for the Kirby vacuum-cleaner company, engaged in door-to-door selling. Lowery, who was a distributor, drove Lamb and Gant in a van to neighborhoods where they conducted sales calls. T.L. sometimes went with them, and she stayed in the van with Lowery.

T.L. testified that on one occasion, Lowery asked her if she wanted to sit on his lap and pretend to drive. While sitting on her lap, Lowery touched her "vaginal parts" with his hand over her clothing. She stated that she could feel his penis becoming erect. T.L. testified that she became scared and began to cry. Lowery told her to stop crying, threatened her mother's life, and told T.L. not to tell her mother what had happened. Lowery also told T.L. to perform oral sex on him. On another occasion when T.L. was with Lowery in the van, T.L. needed to use the restroom. Lowery took her to a gas station. While she was in the restroom, Lowery entered and rubbed her vagina

T.L. also described two incidents that occurred at the Texarkana apartment. T.L. stated that she and Lowery's daughter were coloring on the living-room floor when he put her on his lap. She felt him "grow an erection." Another time when Lowery and T.L. were alone at the apartment, he called her into the living room and began touching her vaginal area outside of her clothing. He then put her on her knees between his legs and made her perform oral sex on him.

On appeal, Lowery first argues that the circuit court erred by admitting the testimony of Lowery's daughter, B.B., who also testified that Lowery sexually abused her when she was five or six years old. At a hearing conducted during the trial, out of the

2

presence of the jury, Lowery made a two-pronged argument. First, he asserted that B.B.'s testimony did not satisfy the conditions necessary to invoke the pedophile exception to Rule 404(b) of the Arkansas Rules of Evidence because there was not the requisite intimate relationship with the alleged victim in the case being tried. Second, however, he argued that because he was facing charges in Pulaski County over the conduct that would be the subject of B.B.'s testimony, it would force him to defend B.B.'s allegations, which would open him up to waiving his right to remain silent in the Pulaski County case. Thus, defending his case in Miller County would prejudice his case involving B.B.

Lowery concedes that there is no merit in his "intimate relationship" argument and expressly abandons it on appeal. However, he still pursues the second prong of the argument he made to the circuit court. He admits that it is a novel argument and that there are no Arkansas cases on point. Nonetheless, he asserts that in the case at bar, the prior act was charged, and the charges were pending in Pulaski County. Accordingly, he was faced with saying nothing at his trial in Miller County and allowing the allegations by B.B. to stand unanswered, or answering them and perhaps providing evidence to the Pulaski County Prosecuting Attorney. He was unrepresented in the Pulaski County matter at the time, but his trial counsel nonetheless considered the pending Pulaski County case as part of his strategic calculus: "While we have a right to confront the witness, the way I confront this witness is going to be, or could be, potentially completely different than the way his attorney in Pulaski County attempts it because he has a confrontation issue. I'm not defending that one. I got to defend what happened to [T.L.]. Therefore, the thrust of his argument is not that what was introduced was unfairly prejudicial, but rather when and

where it was introduced. Lowery concedes that B.B.'s testimony is relevant character evidence under Arkansas Rule of Evidence 404(b). However, he asserts that the circuit court erred in its application of Arkansas Rule of Evidence 403 because the probative value—testimony concerning events that took place more than ten years before was substantially outweighed by its prejudicial effect.

We review a circuit court's evidentiary rulings for an abuse of discretion. *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005). Under Arkansas Rule of Evidence 403, a circuit court must weigh the probative value of the evidence against its prejudicial effect. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In *Berry v. State*, 290 Ark. 223, 233, 718 S.W.2d 447, 453 (1986), we accepted the definition of "unfair prejudice" stated by the advisory committee's commentary to Federal Rule of Evidence 403, which describes it as an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

Rule 403 functions to prevent undue prejudice in the trial in which the evidence in question is sought to be introduced. The intent of the rule is to prevent the trier of fact from being swayed by evidence that obscures the issue before it. Rule 403 does not concern the prejudice to a litigant in some other proceeding. The circuit court in Miller County only has the jurisdiction to control the receipt of evidence in that trial. It cannot control the admission of evidence in a Pulaski County trial.Furthermore, Lowery has failed to

4

articulate how allowing B.B. to testify burdens his right to confront B.B. when she will presumably be the complaining witness in the Pulaski County trial. Lowery will not be bound to employ the same strategy to impeach B.B. as he used in the case-at-bar. If anything, Lowery will be in a stronger position because any variance in B.B.'s testimony will be fertile grounds for impeachment. Accordingly, we hold that the circuit court did not abuse its discretion when it rejected Lowery's argument that the admission of B.B.'s testimony might potentially affect trial strategy by an attorney who had not yet been retained for a trial that was not yet scheduled.

We next consider Lowery's second point on appeal in which he argued that the circuit court abused its discretion by allowing the State to inquire on cross-examination about a disputed police report. Additional facts are necessary to illuminate this point.

The State sought to call Lowery's niece, Michelle Nash, to offer character evidence against Lowery pursuant to the pedophile exception in Arkansas Rule of Evidence 404(b). Out of the hearing of the jury, Nash testified that she was currently a parole officer for Miller County, but she had lived in the home with Lowery during part of her childhood. She stated that she was interviewed by Detective Shane Kirkland, but emphatically denied telling him that she had been a victim of Lowery when she was five years old. Kirkland told her that another uncle had told him she had been a victim, but she told him it was forty years ago and that she did not know anything about it. Subsequently, she discovered from a newspaper story that Kirkland was quoted as saying that, "I was able to contact one of the victims who stated she had been a victim of Gerald Lowery when she was five years old, but did not wish to speak of the incidents due to it being 40 years ago. He went on to

5

tell me that she knew her sister was a victim as well." Ms. Nash reiterated that it was not true, and she had no idea why Kirkland put that in his report. Ms. Nash asserted that Kirkland "twisted" her words. The circuit court precluded the State from calling Officer Nash in the case-in-chief.

However, Lowery called Ms. Nash in his case. She again emphatically denied that Lowery had sexually assaulted her as a child. When she was aware of what Kirkland stated in his report, she stated that she repeatedly tried to contact him, but was unsuccessful in reaching the detective.

Nonetheless, after Lowery testified in his defense, the State sought to use Kirkland's discredited report on cross-examination.

| | |
|---|---|
| MS. MITCHELL FOR THE STATE: | Do you acknowledge that she told Detective Kirkland that she was a victim of yours when she was five years old? |
| MR. MITCHELL FOR THE DEFENSE: | Objection. She's now asking him to say something that actually Ms. Nash has denied. |
| THE COURT: | Restate the question. |
| MS. MITCHELL: | Are you aware of a report that I talked to Michelle Nash about wherein Detective Kirkland said that Michelle Nash told him that she had been your victim when she was five years old? |
| MR. MITCHELL: | Same objection. Michelle Nash has actually denied that. She is asking 'are you aware of a report that Michelle Nash now denies?' There is a report, but I don't think it is relevant with this, to try to get to this witness. |
| THE COURT: | If he knows, he can answer that portion of it if he is aware of the report. |
| WITNESS CONTINUES: | I am aware of the report. When I was seventeen or |

6

eighteen, she would have been five.

The most general rule of evidence is that all relevant evidence is admissible. *Decay v. State*, 2009 Ark. 566, 352 S.W.3d 319 (citing Ark. R. Evid. 402). The circuit court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the circuit court's decision unless it constitutes a clear error or a manifest abuse of discretion. *Id.* However, an abuse of discretion is established when the circuit court erroneously interprets or incorrectly applies the law. *McClanahan v. State*, 2010 Ark. 39, 358 S.W.3d 900; *Reeves v. State*, 374 Ark. 415, 288 S.W.3d 577 (2008).

Lowery asserts that Michelle Nash denied making any statement about being sexually abused by him, and the trial court knew it. Therefore, it was completely irrelevant to any of the issues of the case whether he was aware of that disputed statement was contained in a police report. Further, the detective could not be called to testify about what Officer Nash had told him, as that would be hearsay. Accordingly, Lowery argues that the trial court's ruling was in error.

Lowery further argues that the error is not harmless. The State had presented the testimony of the alleged victim and of his daughter, which he disputed. Allowing the State's question required him to concede he was aware of the report, which loaned some credence to it, despite the previous denials that Officer Nash had made in open court. There was no other reason for the State to go into it unless it thought it was prejudicial to him.

We agree that it was error for the circuit court to allow the State to question Lowery about whether he was "aware" of Kirkland's report. In the first place, the discredited report was the subject of the previously mentioned Rule 404(b) hearing, at which Lowery was

7

present, and in Lowery's case-in-chief during the trial. Lowery had to be "aware" of it. Also, the existence of Kirkland's discredited police report did not concern any element of the crime or serve as legitimate fodder for impeachment as it was not a statement that Lowery himself had made. Cf. Ark. R. Evid. 613. Accordingly, Lowery's knowledge of the report has no probative value. Furthermore, the analysis done by the circuit court, i.e., "If he knows, he can answer that portion of it if he is aware of the report," is not the "due consideration" contemplated by a relevancy objection. Nonetheless, we decline to reverse on this point because the error is harmless.

Where evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm. *Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001). While it was clearly improper for the circuit court to require Lowery to answer the State's improper question, we must be mindful that it concerned a police report that had already been probed at length during the trial and painstakingly discredited. The jury had already been apprised of its content. Accordingly, the evidentiary value of Lowery being forced to admit that he was aware of the discredited report was slight. Furthermore, while we must acknowledge that imbedded in the State's question was the suggestion that Lowery was a pedophile, there was other direct evidence of that aspect of Lowery's character that was provided by B.B. and to an extent by Lowery's admissions that he fondled younger children when he was a minor. Thus, Lowery's answer was cumulative to other evidence of Lowery's character that had been properly admitted. Under these circumstances, we hold that the error is harmless. *See Weber v. State*, 326 Ark. 564, 933 S.W.2d 370 (1996).

Statement of compliance with Rule 4–3(i) Review: In compliance with Arkansas

8

Supreme Court Rule 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

BAKER, J., concurs.

WOMACK, J., concurs in part and dissents in part.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I concur in the decision to affirm Lowery's conviction. But I cannot join the majority's conclusion that the circuit court abused its discretion by allowing the prosecution to ask Lowery if he was aware of a disputed police report on cross-examination. The majority holds that the evidence was irrelevant because Nash denied telling police that Lowery had sexually abused her as a child. Disputed evidence, however, is not necessarily irrelevant evidence.

As the majority points out, the circuit court refused to allow the prosecution to call Nash as part of its case-in-chief. She was subsequently called to testify on behalf of the defense. During that testimony, the jury learned about the disputed police report. They heard Nash emphatically deny that Lowery had abused her, even though the report alleged otherwise. When Lowery took the stand, the court permitted the prosecution to ask if he was aware of the report. He stated that he was. No further questions were asked regarding Nash's testimony or the contested report. I believe this issue embraces a credibility determination falling within the province of the jury. Accordingly, I cannot join the

9

majority's contention that the evidence is irrelevant simply because the report was disputed in these circumstances.

*Joseph C. Self*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.