SLIP OPINION

Cite as 2015 Ark. 132

# SUPREME COURT OF ARKANSAS

No. CR-14-548

| | | |
|---|---|---|
| HEATHER SWAIN | | **Opinion Delivered** April 2, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CR 2013-172-1] |
| STATE OF ARKANSAS | | HONORABLE WILLIAM A. STOREY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Heather Swain appeals from her convictions on charges of accomplice to capital murder and accomplice to kidnapping, which resulted in a sentence of life imprisonment. She argues on appeal that the introduction of certain portions of her interview with police violated her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We affirm.

Appellant was charged with accomplice to capital murder, accomplice to kidnapping, tampering with physical evidence, and engaging in violent criminal-group activity. Prior to trial, she filed a number of motions seeking to have certain evidence suppressed. Among these was a motion to suppress portions of her interview with police on the grounds that statements by officers during the interview constituted inadmissible hearsay and violated her rights under the Confrontation Clause. Included in these statements by police was information that the

SLIP OPINION

police claimed had been given to them by appellant's co-defendants, James Patton, Anthony Alan Swinford, and Timothy Swinford. All of appellant's pretrial motions were denied by the trial court.

At trial, Washington County Sheriff's Deputy Ryan Melancon testified that on December 27, 2012, at approximately 8:30 a.m., he responded to a welfare-check call on Four Corner Road in the far southwest portion of Washington County. As he pulled up, he could see a body on the ground with no shirt, blue jeans, and tennis shoes. Deputy Melancon testified that it was apparent as soon as he touched the body with a gloved hand that the person was deceased. The deceased was subsequently identified as Ronnie Bradley. It was determined that Mr. Bradley had been killed by a combination of blunt-force trauma and strangulation.

The State contended at trial that appellant was an accomplice to the kidnapping and murder of Ronnie Bradley because she went with the co-defendants to pick up Ronnie at his home and subsequently drove her vehicle while James Patton, Tim Swinford, and Alan Swinford beat Ronnie both inside and outside the vehicle and choked him with one of the vehicle's seatbelts. The State produced evidence that blood was found in appellant's vehicle. The State also produced evidence that appellant was seen in her vehicle, along with Ronnie and her co-defendants, between the hours of 12:00 p.m. and 6:00 p.m. on December 26, 2012.

Detective Bret Hagan testified that he conducted a two-and-a-half-hour interview with appellant on December 27–28, 2012. Over appellant's objection, the recording of the

SLIP OPINION

interview was played for the jury. A transcript of the interview was also entered into evidence over appellant's objection. Before the recording was played, the trial court admonished the jury, stating,

> Now, ladies and gentlemen, members of the jury, the State is about to play this interview and you're about to see the interview with the Defendant, Ms. Swain. A number of the questions asked by the officers conducting the interview are basically hearsay[1] and you're therefore not to consider those questions as the truth of the matter asserted, only as a means of interrogating a witness, more particularly Ms. Swain.

During the interview, appellant initially told the detectives that there had been an incident during which Alan and Tim Swinford had punched Ronnie while they were all in her vehicle. She then maintained that Ronnie got into the Swinfords' truck while Alan and Tim came into her home for a short time and that Ronnie, Alan, and Tim left together at about 5:00 p.m. When the detectives confronted her with information from the co-defendants and other witnesses, her subsequent statements changed and included more detail, including indications that Ronnie had begged her to go home, that she wanted to go home but was afraid of Alan and Tim, who refused to allow her to take him home, and that James had tried to stop Alan and Tim and that they had attacked James. She stated that Alan and Tim had "put [Ronnie] out on the road" and promised to go back and get him as opposed to leaving her house with Ronnie in their truck, as she had stated earlier. She also initially

---

[1]Despite the trial court's reference to the questions as "hearsay," its later reference to not considering the questions for the truth of the matter asserted indicates that it was using the term hearsay in its colloquial sense and not according to its legal definition, as hearsay, by definition, must be offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2014).

SLIP OPINION

indicated that Alan was standing next to her when she went to Ronnie's door to pick him up, but then later stated that he was probably not standing where Ronnie could have seen him.

After the State rested, appellant called Alan Swinford to testify. Ronnie had been in a relationship with Alan's wife, Amy, at the time of her death, apparently from a drug overdose, earlier in December 2012, and Alan blamed Ronnie for Amy's death. Alan testified that he and Tim would not let appellant take Ronnie Bradley home even though he asked to go home. He stated that he was not going to let anyone get between him and Ronnie "without a fight." According to Alan, appellant did most of the driving. Alan testified that while appellant went to Ronnie's door, he was in the cargo area of the Suburban with his head against the back window. At one point, while James was driving the vehicle, appellant began yelling at Ronnie about Amy's death. Alan testified that once the beating of Ronnie started, he did most of it, and James struck Ronnie as well.

According to Alan, appellant slapped Ronnie while Ronnie was being beaten. Appellant made statements to Ronnie that she knew would further infuriate Alan. She also pulled over while Ronnie was being beaten, allowed Ronnie to be dragged from the vehicle and beaten, and began driving again after Ronnie had been put back in the vehicle. Alan testified that he did not remember telling appellant that she could not take Ronnie home. Alan also denied telling appellant not to call the police. Alan later contradicted his earlier statement by testifying that he would not let appellant take Ronnie home and indicating that James had tried to stop the beating. Alan then later said that Tim was the only one who said to stop the beating and that he was not sure whether appellant or James ever told him to stop.

4

The jury convicted appellant as an accomplice to both capital murder and kidnapping. The trial court sentenced appellant to life imprisonment without parole on the capital–murder charge and 300 months' imprisonment on the kidnapping charge, with the sentences to run concurrently.  This appeal followed.

Appellant's argument on appeal is that the introduction of the video and transcript of her interview with police violated her right to confront witnesses against her under the Confrontation Clause of the Sixth Amendment to the United States Constitution because the police repeated statements made by co-defendants who did not testify at trial.  As this raises an issue of constitutional interpretation, our review is de novo.  *Vankirk v. State*, 2011 Ark. 428, 385 S.W.3d 144.

We must determine whether the statements objected to by appellant are hearsay, as the admission of nonhearsay raises no confrontation–clause concerns.  *Vidos v. State*, 367 Ark. 296, 310, 239 S.W.3d 467, 478 (2006).  "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Ark. R. Evid. 801(c) (2014).  The State contends that the references by the detectives during appellant's interview to statements made by the co-defendants are not hearsay because they were not offered in evidence to prove the truth of the matters asserted in the statements.  We agree.

As noted above, appellant's responses to the inquiries by the detectives changed as she was confronted with their knowledge of the events leading to Ronnie's death.  It is clear that the purpose of introducing the interview was not to attempt to prove the veracity of the

statements attributed to the nontestifying co-defendants[2] and witnesses. Instead, the purpose was to give context to appellant's responses, make those responses intelligible, and demonstrate how appellant's responses changed as she was confronted with what the detectives had already been told. In addition, the trial court specifically admonished the jury not to consider the statements as evidence of the truth of the matters asserted but as an interrogation technique. We presume that a jury follows the trial court's instructions. *See Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

Appellant argues that two precedents from the United States Supreme Court require reversal in this case. Her reliance on those precedents is misplaced. In *Douglas v. Alabama*, 380 U.S. 415 (1965), the Court held that the defendant's confrontation rights were violated when the prosecution read a witness's confession, which implicated the defendant, into the record after the witness had claimed Fifth Amendment privilege. In *Bruton v. United States*, 391 U.S. 123 (1968), the trial court allowed the prosecution to introduce the confession of a co-defendant at a joint trial, with an instruction for the jury to consider the confession as evidence against the confessing co-defendant but not as evidence against Bruton. The United States Supreme Court held that the defendant's confrontation rights were violated, notwithstanding the instruction. The crucial distinction between *Douglas*, *Bruton*, and the case at bar is that, in the former cases, the disputed statements were clearly out-of-court statements

---

[2]As Alan Swinford testified at trial, any statements attributed to him would not implicate the Confrontation Clause, because he was subject to examination regarding those statements at trial. *Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004). Appellant conceded at oral argument before this court that any statements attributed to Alan would not raise confrontation-clause concerns.

SLIP OPINION

offered to prove the truth of the matters asserted therein. In other words, those statements were undoubtedly hearsay. In *Douglas*, the prosecution was attempting to use the witness's statements to prove the truth of the matters asserted because it could not elicit the same testimony from him at trial. In *Bruton*, the prosecution introduced the co-defendant's confession to prove the truth of his statements because the jury was considering the co-defendant's guilt as well as the defendant's. Here, the State, as explained above, did not introduce the detectives' references to the co-defendants' statements as evidence of the truth of the matters asserted in those statements.

Also, in *Bruton*, the admonition by the trial court was deemed insufficient because the State was attempting to prove the truth of the matters asserted in the statement against one of the defendants, leaving the jury with an extremely difficult task in mentally separating the two defendants with regard to the hearsay statements. Despite appellant's efforts to equate the situation in this case with that presented in *Bruton*, the circumstances presented in the two cases are materially different, because the State was not presenting the statements against appellant as evidence of the truth of the matters asserted in the statements, and appellant was the sole defendant on trial. Thus, the mental contortions required of the jury in *Bruton* were not required here. The holdings in *Douglas* and *Bruton* do not require reversal in this case.

Because the detectives' references to the co-defendants' statements were not introduced into evidence to prove the truth of the matters asserted, they are not hearsay. Because the statements are not hearsay, appellant's confrontation-clause argument has no

7

SLIP OPINION

merit.[3]  *Decay v. State*, 2009 Ark. 566, 352 S.W.3d 319.

This reasoning is in line with decisions from other state appellate courts and federal courts of appeal.  The Eighth Circuit Court of Appeals has held that out-of-court statements that merely provided context for other admissible statements made by a defendant and his co-conspirators that were not offered for their truth were not hearsay.  *United States v. Crippen*, 627 F.3d 1056 (8th Cir. 2010).  In *State v. Tovan*, 605 N.W.2d 717 (Minn. 2000), the court held that statements by police during a taped interview of the defendant about what non-testifying co-defendants had told them were not inadmissible hearsay because they were not offered for the truth of the matter asserted but rather to give context to the defendant's responses and admissions.  Likewise, in *McWatters v. State*, 36 So. 3d 613 (Fla. 2010), the court held that statements by officers during an interview about what nontestifying witnesses had told them were not offered for the truth of the matters asserted, noting that a limiting instruction had been given.  Also, the Indiana Supreme Court has held that statements and questions by police during an interview were not inadmissible hearsay because they were made to elicit responses from the defendant, and were not offered as proof of the facts asserted therein, also noting that a limiting instruction was given by the trial court.  *Strong v. State*, 538 N.E.2d 924 (Ind. 1989).

---

[3]The dissent alleges that we have failed "to take into account" whether a statement by James was made for the truth of the matter asserted when it was made by James to the officer and that we have failed to acknowledge a second layer of hearsay.  While we in no way concede that this assertion has merit, appellant never argued to this court, either in her brief or at oral argument, that the statements constituted inadmissible hearsay on this basis.  This court does not research or develop arguments for appellants.  *Eastin v. State*, 2010 Ark. 275.

Appellant also argues that an opinion by this court affirming the trial court could be subject to being abused by police and the State in future cases. We wish to make it abundantly clear that our holding in this case is limited to the specific facts presented. Similar allegations of confrontation-clause violations that may be made in future cases are to be addressed by our circuit courts, and will be decided by this court and our court of appeals if appealed, in accordance with the applicable law and the specific facts presented in those cases.

The record has been reviewed pursuant to Arkansas Supreme Court Rule 4–3(i), and no reversible error has been found.

Affirmed.

BAKER and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Because the Confrontation Clause encompasses more than a hearsay analysis and because even "interrogation techniques" are subject to a confrontation-clause analysis, I respectfully dissent. The majority errs in concluding that statements made by persons who are not subject to cross-examination do not violate the Confrontation Clause of the United States Constitution as long as those statements are contained within questions posed by law enforcement officers engaged in interrogation. Swain was convicted for her role in the murder of Ronnie Bradley. Three other men were also charged in connection with Bradley's murder, James Patton, Anthony Alan ("Alan") Swinford, and Timothy Swinford. Only one of these men, Alan, testified during Swain's trial. However, the jury heard statements made by the other two men during Swain's trial. Statements made by James and Timothy were used by law enforcement officers during their

9

interrogation of Swain.   Although the police officer who interrogated Swain testified at

Swain's trial, neither James nor Timothy did.   Despite this fact, the majority concludes that

the Confrontation Clause was not violated because the statements were not hearsay and were

part of an "interrogation technique."

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him."  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).   This bedrock procedural guarantee

applies to both federal and state prosecutions. *Id.* (citing *Pointer v. Texas*, 380 U.S. 400, 406

(1965)).   First, the principal evil at which the Confrontation Clause was directed was the civil-

law mode of criminal procedure, and particularly its use of ex parte examinations as evidence

against the accused.  *Id.* at 50.   In *Crawford*, the Court discussed the infamous English trial of

Sir Walter Raleigh:

> The most notorious instances of civil-law examination occurred in the great
> political trials of the 16th and 17th centuries.   One such was the 1603 trial of Sir
> Walter Raleigh for treason. Lord Cobham, Raleigh's alleged accomplice, had
> implicated him in an examination before the Privy Council and in a letter.   At
> Raleigh's trial, these were read to the jury.   Raleigh argued that Cobham had lied to
> save himself: Cobham is absolutely in the King's mercy; to excuse me cannot avail
> him; by accusing me he may hope for favour.   1 D. Jardine, Criminal Trials 435
> (1832).  Suspecting that Cobham would recant, Raleigh demanded that the judges call
> him to appear, arguing that [t]he Proof of the Common Law is by witness and jury:
> let Cobham be here, let him speak it. Call my accuser before my face . . . .   2 How.
> St. Tr., at 15–16.   The judges refused, *id.*, at 24, and, despite Raleigh's protestations
> that he was being tried by the Spanish Inquisition, *id.*, at 15, the jury convicted, and
> Raleigh was sentenced to death.

*Crawford*, 541 U.S. at 44.   The *Crawford* Court made it clear that, even under a narrow

standard, statements taken by police officers in the course of interrogations are testimonial.

*Id*. at 52. In *Crawford*, the Court squarely rejected the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon the rules of evidence. *Id*. at 50–51 (quotations omitted).

Two years after *Crawford*, the Court outlined a two-step process for determining whether statements made during police interrogations were testimonial or nontestimonial in nature. *Davis v. Washington*, 547 U.S. 813, 822 (2006). Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *Id*. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id*.

During the interrogation, Swain stated that she was not driving her car when the victim was dumped out of the car. The interrogating officers stated, "[James] has said, at that point you was drivin' are you sure 'cause [James] has nothin' to gain." After Swain denied ever hitting or having physical contact with the victim, the officers stated, "James says that you sit there and was yellin' at 'em when they had a seatbelt around his neck, in the very back." These statements from James were admitted to the jury without any opportunity for Swain to confront James prior to or during her trial. The trial court recognized that these statements were "basically hearsay," a characterization that the majority dismisses as being used in the "colloquial sense," but went on to instruct that the statements were not considered for

the truth of the matter asserted.

The problem lies in the fact that the circuit court, and the majority, have analyzed only one layer of hearsay. The majority focuses on the truth of the matter asserted from the perspective of the interrogating officer. By stopping there, the majority fails to take into account whether the statement was offered for the truth of the matter asserted when it was made by James to the officer. Undoubtedly, the officers confronting Swain with James's statements framed those statements as true. The majority, however, fails to acknowledge or analyze the layer of hearsay between James and the officers.[1] Instead, the majority cloaks the underlying hearsay in the protective layer of the officer's "interrogation technique," and calls the whole bundle nonhearsay. Even assuming that the officer's "interrogation technique," constitutes nonhearsay—a conclusion I do not agree with—when a statement presents hearsay within hearsay, each layer of hearsay must satisfy both an exception to the hearsay rules and the Confrontation Clause in order to be admissible. *See, e.g.*, *Cook v. State*, 350 Ark. 398, 86

---

[1]The majority contends that it need not reach the issue of whether the statements made by James to the officers constitutes hearsay because Swain did not argue that point before this court. Respectfully, Swain argued that the admission of James's statements via the officers' interrogation violated her right to confront the witnesses against her. In her brief, Swain pointed out specific statements made by the officers during her interrogation that included statements made by third parties. She argued that the officers were "simply repeating out-of-court, testimonial statements by codefendants that were not previously cross-examined by defense counsel," and that "presenting a co-defendant's confession and accusatory statements through an interview with Swain is impermissible under the rationales in *Douglas* and *Bruton*." Clearly, Swain argued that the statements from James to the officers violated her right to confront the witnesses against her. Understanding the nature of those statements is part of a complete Confrontation Clause analysis and does not constitute making the argument for her.

S.W.3d 916 (2002).[2] It is not sufficient to say that the officer did not make the statement for the truth of the matter asserted or that Swain had the opportunity to cross-examine the officer. For, as the Court noted in *Crawford*, even Sir Walter Raleigh was perfectly free to confront those who read the statements of witnesses against him—but that is no substitute for direct confrontation in the presence of those charged with determining guilt. *Crawford*, 541 U.S. at 51.

Moreover, *Crawford* and its progeny are concerned with more than hearsay. If the Confrontation Clause does nothing more than prohibit hearsay, then the bedrock constitutional guarantee is reduced to nothing more than an evidentiary rule, a position the Court firmly rejected in *Crawford*. *Id*. at 51 ("Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices."). The statements allowed by the majority—which were given during the course of a police interrogation, collected for the purpose of criminal prosecution and not because of an ongoing emergency, and presented in

---

[2]The majority finds that the officer's relaying of statements made by Jones constitutes nonhearsay because the purpose was not to establish the veracity of the nontestifying co-defendant's statements but, instead, to give context to Swain's responses. Other jurisdictions have held that a law enforcement officer's testimony that explicitly paraphrases the words of others constitutes "pure hearsay." *See United States v. Shiver*, 414 F.2d 461, 463 (5th Cir. 1969) (stating that a detective's testimony that his investigation "revealed" that a certain car was stolen was "pure hearsay, since he could not have known the facts of his own knowledge"); *see also United States v. Baker*, 432 F.3d 1189, 1206 (11th Cir. 2005) (finding that a police officer's testimony that a named informant, who did not testify at trial, identified the defendant as the shooter was "unquestionably hearsay," even though the officer did not explicitly paraphrase the words of others, because the only conceivable explanation for how the officer discovered the information was through listening to the statements of others). Here, the officer's source of knowledge was James's statements. Consequently, I do not agree that the officer's paraphrasing of those statements necessarily constitutes nonhearsay, and I do not agree that Swain's reliance on *Douglas* and *Bruton* is misplaced.

SLIP OPINION

SLIP OPINION

court absent the opportunity to confront the declarant—are the archetypal testimonial statements the Court has found to violate the Confrontation Clause. Yet, somehow, by removing these statements one degree and covering them in the wrapping of a nonhearsay "interrogation technique," the majority finds no error. Hearsay, even if covered by nonhearsay, remains hearsay.

I acknowledge that this court has held that where a statement is admitted for a legitimate, nonhearsay purpose, that is, not to prove the truth of the assertions therein, the statement is not hearsay under the traditional rules of evidence and the nonhearsay aspect raises no confrontation-clause concerns. *Dednam v. State*, 360 Ark. 240, 248, 200 S.W.3d 875, 880 (2005). However, where the danger of unfair prejudice from the jury's consideration of hearsay statements outweighs the probative value of the nonhearsay purpose, those statements are not admissible. *See United States v. Churchwell*, 465 F. App'x 864, 865 (11th Cir. 2012) (noting that statements by out-of-court witnesses to law enforcement officials "may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement); *United States v. Benitez-Avila*, 570 F.3d 364, 371 (1st Cir. 2009); *Baker*, 432 F.3d at 1212 (finding that the prejudice stemming from the hearsay use of newspaper articles substantially outweighs the probative value of the articles' nonhearsay use to establish the publicity surrounding a murder); *United States v. Slaughter*, 386 F.3d 401, 403 (2d Cir. 2004) ("Testimony containing hearsay may be admissible not for its truth but as

background information if (1) 'the non-hearsay purpose by which the evidence is sought to be justified is relevant,' and (2) 'the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement.'"); *State v. Miguel C.*, 46 A.3d 126, 135 (Conn. 2012) ("Even if the court deems evidence relevant for a limited, nonhearsay purpose, such evidence is still inadmissible when its probative value is outweighed by the danger of unfair prejudice."); *Craig v. State*, 630 N.E.2d 207, 211 (Ind. 1994) ("If the fact sought to be proved under the suggested non-hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained."). In this case, the danger of prejudice from the jury's consideration of the hearsay statement as proof of what it asserted far outweighed the proper probative value of the evidence, which was nil.[3]

Under the majority's approach, any statement can be admitted at trial without providing the defendant with the opportunity to confront the declarant as long as the statement passes through a police officer engaged in an interrogation. I cannot agree that this

---

[3]The majority does little to weigh the prejudicial versus probative value of the statements at issue in this case. Instead, the majority seems to accept the notion that the statements had to be admitted for context and to demonstrate that Swain's answers changed throughout the interrogation. During the interrogation, Swain first stated that there was a fight between the victim, Allen, and Timothy in her vehicle but that she and James went back to her house, and that Allen and Timothy put the victim in their truck and left. At first, Swain denied being in the vehicle when the victim was thrown out. Later, she stated that "[Tim] or [Allen] was driving [when the victim was thrown out of the car] and I was sittin' in the passenger side." Finally, she stated "I'm not 100% sure who was drivin' when . . . I drove some, I didn't drive some." Even without the hearsay statements by James, the changes in Swain's answers throughout the interrogation are easy to identify, making the probative value of James's statements very low, at least for the nonhearsay purposes identified by the majority.

satisfies the Confrontation Clause.  I would reverse and remand for a new trial in light of the fact that Swain's right to confront the witnesses against her was violated by the introduction of hearsay statements relayed to officers by James and then introduced at trial under the guise of an "interrogation technique."

HART, J., joins.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.